OTTO REAL ESTATE, INC., Plaintiff-Appellee, v. SHELTER INVEST-
MENTS *et al.*, Defendants-Appellants.

Fourth District   No. 4—86—0460

Opinion filed March 25, 1987.

Michael J. Tague, of Franklin, Flynn & Palmer, of Champaign, for appellants.

John H. Otto, of Zimmerly, Gadau, Selin & Otto, of Champaign, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

Plaintiff filed suit to recover a broker's commission or finder's fee from the defendants with respect to the sale of certain real property. Plaintiff's motion for summary judgment on liability was granted, as was its subsequent motion for summary judgment on damages. The circuit court awarded plaintiff $121,200, which represented 6% of the total sale price.

On appeal, defendants contend that (1) plaintiff may not recover in *quantum meruit* because an express contract existed between the parties, (2) a material question exists as to whether plaintiff was the procuring cause of the sale or conferred a valuable benefit upon defendants, (3) a material question exists as to the value of plaintiff's services, (4) the trial judge improperly granted summary judgment on damages based on personal knowledge rather than the evidence, and (5) the court erred in refusing to allow defendants to file a counterclaim.

There is no serious dispute over the facts. Defendant, Olen Parkhill, was a general partner in Shelter Investments (Shelter), which owned two pieces of real estate known respectively as the Charleston and Macomb apartment complexes. Parkhill was acquainted with Michael Bays, who, as a sideline, worked part-time for various real estate agents as a salesman. During the period of the transaction in question, Bays was associated with the plaintiff real estate agency, which was run by Wilmer Otto.

In the fall of 1983, Parkhill contacted Bays and told him that Shelter wanted to sell both apartment properties and that a real estate commission or finder's fee in the amount of $50,000 would be payable to Bays if he could obtain a buyer who would purchase both properties at an aggregate price of $2,900,000. Although there were slight discrepancies between the various witnesses' testimony as to the individual prices which were to be quoted for each property, there is general agreement that the asking price for the Charleston complex was to be approximately $2,500,000 and that Macomb was to be quoted at $425,000.

After this conversation, Bays contacted John Young and told him about the availability of the Charleston property. Young, on behalf of a corporation, contacted Parkhill and through protracted negotiations an agreement was reached and the Charleston property was sold to Young's corporation for $2,020,000. The Macomb complex was not sold. Subsequent to the initial contact between Young and Parkhill, both Bays and Otto made several telephone calls, transmitted documents, and arranged or participated in several meetings involving the principals to the transaction. Bays estimated that his activity in this transaction amounted to less than 10 hours.

Parkhill, however, refused to pay either Bays or Otto a finder's fee or commission because both properties were not sold under the terms of the oral agreement. Parkhill, however, acknowledged that, after a demand for payment, he offered $3,000 or $3,500 as a finder's fee, which was rejected. Parkhill also admitted that an initial draft of a purchase agreement prepared by defendants' attorney stated that the sellers' broker was Wilmer Otto.

Upon motion, summary judgment on liability was granted to plaintiff and the cause was set for trial on damages. A subsequent motion for summary judgment on damages was filed by plaintiff and was accompanied by affidavits of two experts who, in substance, offered the opinion that the customary real estate commission in Coles County, Illinois, was 6% of the sale price. A counteraffidavit was produced by defendants which opined that there was no typical fee struc-

ture for transactions of this size but did not offer any opinion as to what an appropriate fee might be in this particular case.

On the foregoing, the trial court granted summary judgment to plaintiff and awarded damages in the amount of $121,200, or 6% of the sale price.

Defendants initially contend there can be no quasi-contractual relief when an express agreement exists between the parties concerning the same subject matter that would give rise to the quasi-contract. Defendants reason that since the express agreement required the sale of both properties for the fee to accrue, plaintiff can only recover, if at all, upon proof of exact compliance with the express contract. Since plaintiff admits that both properties were not sold, defendants reason that plaintiff is entitled to nothing.

■ While we agree that quasi-contractual relief is not available when a definite contract between the parties exists, we believe that plaintiff has adequately pleaded the existence of a contract, implied in fact, upon which liability can be predicated. In count II of the complaint, plaintiff alleged that defendants requested certain services which plaintiff claims it went on to perform, at least in part. Parkhill's statements to Bays were an offer of a unilateral contract which was accepted by the actual rendition of services in securing a purchaser for the Charleston apartment complex. See *Edens View Realty & Investment, Inc. v. Heritage Enterprises, Inc.* (1980), 87 Ill. App. 3d 480, 408 N.E.2d 1069.

Having established the existence of a contract, the question becomes whether an agent whose compensation is conditional upon procuring a transaction on specified terms is entitled to compensation if, as a result of all of his efforts, a transaction is effected on different or modified terms, although the principal benefits thereby. See Restatement (Second) Agency sec. 447 (1958).

It is stated in section 564 of Corbin on Contracts:

"The statement is frequently found that where the parties have made an express contract the law will not imply one. This is a misleading statement, even though some truth is concealed within it. It is more accurate, even though not very useful as a working rule to say that where the parties have made an express contract, the court should not find a different one by 'implication' concerning the same subject matter if the evidence does not justify an inference that they intended to make one. Of course, even in the absence of any express promise or contract, an implied promise or contract should not be found to exist unless the conduct of the parties, under the existing circum-

stances, makes such an inference or implication reasonable. *But the fact that an express contract has been made does not prevent the parties from making another one tacitly, concerning the same subject matter or a different one."* (Emphasis added.) (3 A. Corbin, Contracts sec. 564, at 292 (1960).)

As further pointed out in section 567 of Corbin on Contracts:

"The fact that an express contract for a commission was made between principal and agent does not prevent the finding of a different promise by implication where the services contemplated in the express contract were never rendered. The acceptance by the principal of a different service, knowing that the agent expected pay for rendering it, justifies the finding of a promise to pay at a reasonable rate." 3 A. Corbin, Contracts sec. 567, at 318 (1960).

The case of *Moylan v. Estes* (Fla. App. 1958), 102 So. 2d 855, is instructive. Defendant brought an action for a real estate broker's commission upon a written contract. Defendant was instrumental in obtaining a written contract for sale of a large tract of land owned by the plaintiff. After the contract was executed, the purchaser learned that a dike was to be built across the property and refused to consummate the transaction. Subsequently a new agreement was reached between the purchaser and the plaintiff and eventually only a portion of the land originally under contract was sold to the purchaser at a price in excess of that in the original agreement. The trial court entered summary judgment for the plaintiff, concluding that the broker could not recover on an implied contract when the subject matter of the contract was express, especially when the broker did not continue negotiations with the purchaser after abandonment of the original contract.

On appeal, the Florida Appellate Court reversed, noting that it was not questioned that the broker was the procuring factor in the eventual sale. Since it was solely through his efforts that the parties were brought together, he could not be denied a commission simply because the parties reached a different agreement than that originally entered. From these facts, the court found an implied promise arose to pay the broker a commission for the amount of land actually sold although this amount was less than that originally contracted for. To rule otherwise, the court said, would be to sanction fraud.

■ In the instant case, it is undisputed that Parkhill's statement to Bays prompted Bays to contact Young, who immediately sought out Parkhill and the negotiations began which resulted in the sale. While defendants may have been able to reject any offer for sale and

owe plaintiff nothing if both properties at a specified price were not included in the transaction, defendants did execute a partial sale which represented a new contract, implied in fact, under which plaintiff may claim recovery.

■■■ Defendants also contend that a material question exists as to whether plaintiff established it was the "procuring cause" for the transaction and whether a valuable benefit was conferred upon defendants. Although the parties refer loosely to the fee under the terms of the agreement as a broker's commission or finder's fee, the evidence appears to predominate that the fee was intended to be a finder's fee rather than a broker's commission. The only distinction between a finder and a broker is that the former has no duty to perform in connection with negotiating the contract. (*Anderson v. Gewecke* (1976), 36 Ill. App. 3d 170, 343 N.E.2d 673; *Modern Tackle Co. v. Bradley Industries, Inc.* (1973), 11 Ill. App. 3d 502, 297 N.E.2d 688.) It is undisputed that Bays "found" Young, who consummated the sale with defendants. There was never any testimony that Parkhill expected Bays to negotiate the sale. A "finder" is defined as an intermediary who contracts to find, introduce and bring together the parties to a business opportunity, leaving ultimate negotiations and consummation of the business transaction to the principal. (*Business Development Services, Inc. v. Field Container Corp.* (1981), 96 Ill. App. 3d 834, 422 N.E.2d 86.) Under this definition as applied to the evidence, Bays, as an agent for plaintiff, certainly qualified as a "finder."

■ Defendants' second contention that no benefit was conferred on them is without merit as well. The property was sold. Although the original asking price was approximately $2.5 million, the evidence indicated substantial deferred maintenance drove down the price of the property appreciably. At no time did any defendant testify that the original asking price was the minimum which would be accepted under any condition, and there was no testimony that defendants were forced by duress or fraud to enter the agreement. Thus, when the sale actually took place, the benefit was conferred. (See *Western Pride Builders, Inc. v. Zicha* (1974), 23 Ill. App. 3d 770, 320 N.E.2d 181; *Haas v. Cohen* (1973), 10 Ill. App. 3d 896, 295 N.E.2d 28.) Summary judgment on liability was properly entered against defendants.

■■ Defendants next contend summary judgment on damages was precluded because a material question of fact existed as to the value of plaintiff's services and the trial judge considered improper factors. Because we agree that damages were improperly calculated on a theory of *quantum meruit* rather than under contract, we agree that this

case must be remanded for trial on damages. We believe the measure of damages in this case should be determined in accordance with the guidelines of section 447 of the Restatement (Second) of Agency, which speaks to cases in which the consummated transaction differs from the original agreement. In pertinent part, the Restatement provides:

> "In such cases, if the promised commission is a lump sum, the broker is entitled to that sum for a sale of which he is the effective cause, although the price paid by the customer is greater or less than the original price the broker was authorized to offer, unless it is found that the parties stated a definite sum only as a method of expressing a percentage of the price expected to be received. If the agreement in terms provides that the compensation is a percentage of the purchase price, or if the manifestations of the parties are so interpreted, the amount of the commission is based upon the final price agreed upon. \*\*\*
>
> Illustrations:
>
> 1. In a locality in which the customary rate of commission for real estate brokers is 5 per cent., P tells A., a broker, that he is authorized to offer P's land for sale at $75,000 and that 'we will allow you $2,000 commission.' A produces T, a prospective customer, who, after negotiation with P, buys the property for $50,000. It may be found that A is entitled to the $2,000 commission, or to two-thirds of that amount if other facts indicate that the promised commission was calculated on a percentage basis." Restatement (Second) Agency sec. 447, comment b, at 354-55 (1958).

On remand, damages are to be calculated with reference to the foregoing principles and the terms of the contract originally contemplated by the parties. In any event, we conclude damages cannot exceed $50,000 under the terms of that agreement.

■ Finally, defendants conclude that it was error for the trial court to refuse to allow them to file a counterclaim alleging breach of fiduciary duty and self-dealing. Defendants sought leave to file the counterclaim some 11 months after filing their answer. Section 2—608 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—608(b)) provides that the counterclaim shall be a part of the answer. It is within the court's discretion to allow the filing of a counterclaim subsequent to the filing of an answer. (*Evaskus v. Neff, Kohlbusch & Bissell, Inc.* (1963), 40 Ill. App. 2d 416, 189 N.E.2d 542.) No satisfactory explanation is offered for the delay in filing the counterclaim,

and, under the circumstances, the trial court did not abuse its discretion for denying leave to file it on that basis alone.

Moreover, we conclude that the counterclaim failed to state a cause of action. Although there are conclusory allegations that Wilmer Otto relayed information concerning the defendants to the prospective purchasers of the property which damaged defendants' bargaining position prior to the sale, nowhere is there an allegation concerning the extent of Otto's authority to act in the negotiations for sale. Any duty Otto owed to the plaintiff, be it fiduciary or otherwise, was dependent upon the scope of his authority to act. Absent such an allegation, defendants would be unable to prove that a duty was breached. Permission to file defendants' counterclaim was properly denied.

In sum, we affirm the order granting summary judgment of the issue of liability. The order granting summary judgment on damages is reversed and the cause is remanded for further proceedings not inconsistent with the views expressed herein.

Affirmed in part, reversed in part, and remanded with directions.

SPITZ, P.J., and LUND, J., concur.