993 F.2d 1549
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
CONWAY CORPORATION, Plaintiff-Appellant,
v.
ALPHA DISTRIBUTORS, LIMITED, Delta Transportation, Limited,
and Omega Distribution Services, Incorporated,
Defendants-Appellees.
 No. 92-2386.
 United States Court of Appeals, Seventh Circuit.
 Argued Jan. 27, 1993.
Decided June 2, 1993.
 
 1
 Before CUMMINGS and KANNE, Circuit Judges, and MICHAEL M. MIHM, Chief District Judge*.
 
 ORDER
 
 2
 In this diversity suit, Conway Corporation ("Conway"), an Illinois entity, sued Alpha Distributors, Ltd. ("Alpha"), and two affiliated companies, all Wisconsin corporations, for $393,440 in brokerage fees because of services Conway supposedly rendered in helping sell Alpha's assets. The district court decided the case in defendants' favor, and we affirm.
 
 
 3
 Conway is a business broker that assists closely held corporations and their shareholders in selling their assets or stock. In 1989 Conway was engaged by Alpha to assist in selling its assets and the assets of its two affiliates, Delta Transportation, Ltd. and Omega Distribution Services, Inc. Alpha and Conway entered into a written brokerage agreement dated July 3, 1989, for six months, terminating on January 3, 1990. Conway was to receive a commission on a sale occurring within the six-month term. However, the contract contained a twelve-month fee entitlement period for buyers procured by Conway on Alpha's behalf; thus Conway would still get a commission if a buyer it had located purchased Alpha within a year after the parties' initial contact. No modification of the agreement was to be binding unless agreed to in writing.
 
 
 4
 Toward the end of the six-month term--in November 1989--Conway approached a subsidiary of The Lewis Company ("Lewis") regarding a possible transaction with Alpha. From March 6, 1990, through May 1990, Alpha, using Conway as an intermediary and broker, and Lewis negotiated the terms of the transaction. On March 6 the managing director of Lewis sent Alpha a letter of intent setting forth its proposal for the purchase of the capital stock of Alpha and its related companies. Revised letters of intent were sent on April 10 and 18, 1990. Still another letter of intent was presented by The Lewis Company to Alpha on June 8, 1990. After a due diligence review, however, Lewis concluded that Alpha's profitability had been overstated, and negotiations were suspended in July 1990. Thus none of the letters of intent from March and April 1990 were actually executed.
 
 
 5
 Alpha and Lewis suspended negotiations in July 1990, and indeed Conway had no further dealings with either of the principals after May 1990. Because November 8, 1990, was the last day of the twelve-month entitlement period under the brokerage contract and Lewis and Alpha had failed to come to agreement, Conway's rights to a commission for any sale involving Lewis and Alpha expired. That same month, however, Alpha and Lewis resumed negotiations at Alpha's instigation--without Conway's participation--and a letter of intent was signed on December 6, 1990. The terms of the sale were basically the same as the earlier proposals when Conway had been involved, but the price was lower and, of course, references to the commission owed to Conway as broker were deleted. Finally, on December 31, 1990, Alpha and Lewis executed a stock purchase agreement, and the closing occurred on January 28, 1991. Conway then demanded that Alpha pay it a fee of $393,440 under the brokerage contract. When Alpha refused, Conway filed this lawsuit.
 
 
 6
 Plaintiff relies on the so-called Illinois rule that sometimes permits a broker to recover for a sale after the brokerage contract expires where the seller waives time limitations or where the broker engages in negotiations until a sale is made (Br. 26-32). This rule, in essence, prevents the principals from receiving a windfall by relying on a broker's services but simply waiting until the expiration of the contract's time limit before finalizing a deal. There are two reasons why the Illinois rule cannot salvage Conway's commission. First, there was a genuine break in negotiations between Lewis and Alpha from July to November 1990, such that the resumption of discussions occurred without Conway's assistance. Second, the Illinois rule only applies where a broker provides continuous services through the consummation of a sale. And while Conway did render services for Alpha beyond its six-month contractual obligation, it ceased all activity involving these parties before the twelve months (during which it could have earned a commission under the contract) were up.
 
 
 7
 Conway complains that the actions of Lewis and Alpha were unfair to it, but as a sophisticated party Conway should not expect a court to save it from a brokerage contract whose terms are unfavorable. On March 19, 1992, Judge Zagel granted defendants' motion to dismiss. This judgment was amply supported by the attached Memorandum Opinion and Order. For the reasons expressed therein the judgment is affirmed.
 
 ATTACHMENT
 IN THE UNITED STATES DISTRICT COURT
 FOR THE NORTHERN DISTRICT OF ILLINOIS
 EASTERN DIVISION
 
 8
 Conway Corporation, Plaintiff,
 
 
 9
 v
 
 
 10
 Alpha Distributors, Ltd., Delta Transportation, Ltd., Omega
 
 
 11
 Distribution Services, Inc., Defendants.
 
 No. 91 C 2762
 MEMORANDUM OPINION AND ORDER
 
 12
 Defendants move pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the Amended Complaint of Plaintiff Conway Corporation for failure to state a claim upon which relief can be granted. For the reasons set forth below, defendants' motion is granted.
 
 I.
 
 13
 The facts as set forth in the Amended Complaint, which must be taken as true for the purposes of this motion, Bethlehem Steel Corp. v. Bush, 918 F.2d 1323, 1326 (7th Cir.1990), are as follows: Plaintiff Conway Corporation ("Conway") advises and assists closely held corporations in effecting the sale of their interests. Defendant Alpha Distributors, LTD. ("Alpha"), and its affiliated companies, Delta Transportation, LTD. ("Delta"), and Omega Distribution Services, Inc. ("Omega"), are closely held corporations. The shares of Alpha, Delta and Omega, referred to collectively in this opinion as "Alpha," are held by the same individuals.
 
 
 14
 On July 3, 1989, Conway and Alpha entered into a written contract. The agreement set forth the terms under which Conway agreed to serve Alpha as an independent contractor to effect the sale of Alpha. The agreement defined a sale as "any transaction, including a merger or purchase of any of the stock or assets, whereby the business of Alpha Distributors and/or the business of its affiliated companies, is acquired through the efforts of Conway Corporation." Next to the heading "Term," the contract stated that the "Agreement shall be in effect for six months from the date of ..." execution. Under "Fees," the contract stated that "[i]n the event of a Sale during the Term of this Agreement due to the efforts of Conway Corporation, ALPHA DISTRIBUTORS agrees to pay Conway Corporation ... a Fee based upon the total consideration ... received by ALPHA DISTRIBUTORS, its shareholders and affiliates ..." arising from the sale. "The entitlement to Fees for buyers brought to the attention of ALPHA DISTRIBUTORS or buyers approached on behalf of ALPHA DISTRIBUTORS by Conway Corporation shall be in effect for a period of twelve months from the date of such contact with the buyer."
 
 
 15
 In November 1989, Conway identified The Lewis Company as a potential purchaser of Alpha. Conway brought The Lewis Company to the attention of Alpha. Early in March 1990, The Lewis Company presented to Alpha a letter of intent for the purchase of the capital stock of Alpha. From March through May 1990, Conway acted as an intermediary and broker as Alpha and The Lewis Company negotiated the terms of the proposed stock purchase. The parties revised the letter of intent several times between March and May of 1990.
 
 
 16
 At Alpha's request, representatives of Conway and The Lewis Company attended a meeting at Alpha's offices. At that meeting, The Lewis Company stated that its due diligence revealed that Alpha's profitability was not as great as represented and that further negotiations regarding the purchase price were necessary. Subsequently, The Lewis Company presented to Alpha a revised letter of intent dated June 8, 1990, that provided for a reduced purchase price. As with all of the proposed letters of intent under negotiation since March 1990, paragraph nine of the June 8 proposal stated: the "Shareholders [of Alpha] acknowledge that Conway Corporation has represented them in connection with the transactions contemplated hereby, and that the payment of any fee due such agent is their sole obligation."
 
 
 17
 From July through October 1990, Alpha and The Lewis Company suspended negotiations. Then, in November 1990, at the initiation of Alpha, negotiations resumed. Alpha and The Lewis Company executed a revised letter of intent dated December 6, 1990. Except for the purchase price, which was reduced, the substantive provisions of the December 6 proposal were substantially similar to the previous proposals. But the provision identifying Conway as the party responsible for brokering the transaction was no longer present. In December 1990 Alpha and The Lewis Company executed a stock purchase agreement pursuant to which the businesses of Alpha were sold to The Lewis Company. The closing occurred under the stock purchase agreement on January 28, 1991. Conway has demanded that Alpha pay Conway the fee provided for in the July 3, 1989 contract between Conway and Alpha. Alpha has refused to pay. This action ensued.
 
 II.
 
 18
 The Amended Complaint sets forth three claims for relief based on the foregoing facts. Those claims are as follows: (1) breach of an express contract (Count I); (2) breach of a contract implied in fact (Count II); and breach of a contract implied in law (Count III).
 
 
 19
 A plaintiff fails to state a claim upon which relief may be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Leahy v. Board of Trustees of Community College District No. 508, 912 F.2d 917, 921 (7th Cir.1990) (quoting Conley v. Gibson, 78 S.Ct. 99, 101-02 (1957)). In evaluating the sufficiency of the pleadings, the Court assumes "well-pleaded allegations are true and shall draw all reasonable inferences in the light most favorable to the plaintiff." Bethlehem Steel Corp. v. Bush, 918 F.2d 1323, 1326 (7th Cir.1990).
 
 
 20
 Because this is a diversity case and neither party raised an issue as to what state's law to apply, the Court will apply the substantive law of Illinois, the forum state. Wood v. Mid-Valley, Inc., 942 F.2d 425, 426 (7th Cir.1991). " 'The decision of a federal court in a ... case in which state law provides the rule of decision, is an exercise in predicting how the highest court of the state would decide the case if it were presented to it.' " Midwest Knitting Mills, Inc. v. United States, 950 F.2d 1295, 1298 (7th Cir.1991) ( quoting Konradi v. United States, 919 F.2d 1207, 1213 (7th Cir.1990)). If there is no state precedent that directly controls the issues presented, it is this Court's "duty to determine how the case would be decided if presented today to the Supreme Court of Illinois." Ross v. Creighton University, No. 90-2509, slip op. at 6 (7th Cir. March 2, 1992).
 
 Breach Of An Express Contract (Count I)
 
 21
 Although it is somewhat ambiguous, it appears that Conway attempts to assert a claim to a brokerage fee under the terms of the July 3, 1989 contract. There is no question that Alpha and Conway made an express contract under which Alpha agreed, subject to certain conditions, to pay Conway a fee for brokerage services. The issue is whether Conway has stated a claim for breach of the express contract.
 
 
 22
 The July 3 contract entitles Conway to fees "[i]n the event of a sale during the Term of this Agreement ..." Although the "term" of the contract ended six months from the date of execution (or January 3, 1990), the contract provided that Conway's entitlement to fees remained in effect for twelve months from the date that Conway approached the eventual buyer on behalf of Alpha. Conway first approached the Lewis Company in November 1989. Thus, Conway's entitlement to fees stemming from a sale of Alpha to The Lewis Company expired in November 1990, twelve months after its initial contact with The Lewis Company. Alpha and The Lewis Company did not consummate the stock purchase until January 1991, more than a year after Conway's initial contact with The Lewis Company on behalf of Alpha. Therefore, the alleged facts do not support a cause of action for breach of the express contract. Count I is dismissed.[1]
 
 
 23
 Breach Of A Contract Implied In Fact (Count II)
 
 
 24
 Next, Conway seeks to recover a fee under a contract implied in fact. Illinois courts recognize a distinction between contracts implied in law and those implied in fact. See People ex rel. Hartigan v. Knecht Services, Inc., 159 Ill.Dec. 318, 323 (Ill.App. 2 Dist.1991); Century 21 Castles By King v. First Nat'l Bank, 121 Ill.Dec. 174, 177 (Ill.App. 2 Dist1988). A contract implied in law, sometimes referred to as a quasi-contract, "exists from an implication of law that arises from facts and circumstances independent of an agreement or consent of the parties; the intention of the parties is entirely disregarded." Century 21 Castles, 121 Ill.Dec. at 177; Heavy v. Ehret, 116 Ill.Dec. 781, 786 (Ill.App. 1 Dist.1988). In contrast, "[c]ontracts implied in fact arise from a promissory expression that is inferred from circumstantial evidence of an intent to be bound." Century 21 Castles, 121 Ill.Dec. at 177; Heavy, 116 Ill.Dec. at 786; People ex rel. Hartigan, 159 Ill.Dec. at 323. The agreement between parties to a contract implied in fact is "arrived at by a consideration of their acts and conduct." Century 21 Castles, 121 Ill.Dec. at 177.
 
 
 25
 Conway contends that after the term of the express contract expired on January 3, 1990, the acts and conduct of Conway and Alpha gave rise to an implied in fact contract. Conway notes that during March, April and May of 1990, it continued to provide services to Alpha by acting as an intermediary between Alpha and The Lewis Company, and negotiating the transaction on Alpha's behalf. Its brokerage services were rendered, Conway asserts, "with full knowledge and at the direction of Alpha." Plf. mem. at 6. And Alpha continued to accept Conway's services "long after it now claims to have thought the 'term' of the letter agreement had expired." Id.
 
 
 26
 Alpha responds, relying on the decisions of courts outside of Illinois, that the prerequisite for a contract implied in fact is that there be no express agreement dealing with the same subject matter. When "an express agreement cover[s] the subject matter of the alleged implied-in-fact agreement, the implied-in-fact agreement is precluded as a matter of law." Radio Today, Inc. v. Westwood One, Inc., 684 F.Supp. 68, 71 (S.D.N.Y.1988). Accord ITT Federal Support Services v. United States, 531 F.2d 522, 528 n. 12 (Ct.Cl.1976). Based on the rule stated in Radio Today, Inc. and ITT Federal Support Services, Alpha argues that since Conway and Alpha entered into an express contract covering the conditions under which Conway is entitled to a fee, Conway cannot state a claim for a contract implied in fact on that same subject.
 
 
 27
 Neither party has cited an Illinois decision governing the issue for decision. With regard to contracts implied in law (or quasi-contracts), Illinois appellate courts hold that no quasi-contractual claim can be asserted if an express contract or a contract implied in fact exists between the parties concerning the same subject matter on which the quasi-contractual claim rests. People ex rel. Hartigan, 159 Ill.Dec. at 323; Heavy, 116 Ill.Dec. at 786; see also Gibbs-Brower Int'l v. Kirchheimer Bros. Co., 611 F.Supp. 122, 127 (N.D.Ill.1985). But the Court is unaware of Illinois precedent that directly controls the question of whether an implied in fact contract can coexist with an express contract on the same subject. Since the Illinois Supreme Court has never confronted the issue before the Court, we look to relevant Illinois appellate court precedent, and then the decisions of other states, in order to formulate our holding. Ross, No. 90-2509, slip op. at 6 ( citing Brooks v. Chicago Downs Association, 791 F.2d 512, 514 (7th Cir.1986).
 
 
 28
 The reasons supporting the rule that an implied in law contract cannot coexist with an express contract on the same subject counsel against allowing a claim under an implied in fact contract when an express contract between the parties covers the same subject. The rule guards against the use of implied in law or quasi-contract "as a means for shifting a risk one has assumed under contract." Industrial Lift Truck v. Mitsubishi Int'l Corp., 60 Ill.Dec. 100, 103 (Ill.App.1 Dist.1982); Gibbs-Brower Int'l, 611 F.Supp. at 127 (rule guards against distorting negotiated arrangement by broadening scope of contract).
 
 
 29
 When parties enter into a contract they assume certain risks with an expectation of a return. Sometimes, their expectations are not realized, but they discover that under the contract they have assumed the risk of having those expectations defeated. As a result, they have no remedy under the contract for restoring their expectations. In desperation, they turn to quasi-contract for recovery. This the law will not allow.
 
 
 30
 Industrial Lift Truck, 60 Ill.Dec. at 103.[2]
 
 
 31
 Here, Conway assumed the risk that its fee would be contingent upon the consummation of a sale within twelve months from the date that Conway approached the eventual buyer on behalf of Alpha. The contractual time limitations of the July 3, 1989 agreement between Conway and Alpha were part of an arms length transaction supported by consideration. The contract's provisions concerning Conway's entitlement to fees are straightforward and concise. Moreover, the contract was declared to be the entire agreement of the parties and could only be amended by a written modification of the contract. No such modification was made.
 
 
 32
 It is true that Conway continued its efforts on Alpha's behalf after the six month contract term ended. But those efforts occurred within the twelve month entitlement to fee provision. Conway does not allege that it continued to provide brokerage services to Alpha after the expiration of the twelve month period. In fact, Conway had no contact with Alpha after May 1990--eight months before Alpha and The Lewis Company concluded the sale. The agreement does not state that Conway is entitled to a fee simply because it continues to work for a sale between the end of the contract term and the expiration of the entitlement to fee provision. Under the contract, Conway's fee is contingent upon a sale within the term of the contract or within twelve months from the date of initial contact with the eventual purchaser. No such sale occurred.
 
 
 33
 The Illinois appellate courts and courts of other jurisdictions have not allowed the use of quasi-contractual claims to shift bargained-for risk. When an express contract exists between the parties, courts hold the parties to their bargains. This rule prevents a party who made a bad business decision from avoiding a risk he has expressly assumed. This Court believes that the Illinois Supreme Court would find compelling the policy considerations that courts have identified in refusing to allow the coexistence of express and implied in law contracts on the same subject. This Court also believes that the Illinois Supreme Court would conclude that those policy considerations apply with equal force to the coexistence of express and implied in fact contracts. In short, Conway cannot now turn to implied contractual remedies to recover a fee for which it did not bargain. Consequently, we hold that the Illinois Supreme Court would refuse to recognize the existence of a contract implied in fact governing Conway's entitlement to a fee when there is an express contract between Conway and Alpha concerning that same subject. Count II is dismissed.
 
 
 34
 Breach Of A Contract Implied In Law (Count III)
 
 
 35
 As discussed above, Illinois courts hold that no claim on a contract implied in law can be asserted if an express contract exists between the parties concerning the same subject matter. See, e.g., People ex rel. Hartigan, 159 Ill.Dec. at 323; Heavy, 116 Ill.Dec. at 786. "[B]ut the rule is otherwise if the quasi-contractual claim involves different subject matter." Heavy, 116 Ill.Dec. at 786 ( citing Board Of Directors Carriage Way Property Owners Association v. Western Nat'l Bank, 94 Ill.Dec. 97, 191 (Ill.App.1 Dist.1985). The "different subject matter" exception to the general rule is a slippery concept. In this Court's judgment, the exception is applicable only when the difference in subject matter between the express and alleged implied contract is substantial.
 
 
 36
 Conway argues that its claim under Count III meets this exception to the rule.[3] In arguing that the exception applies here, Conway relies heavily on Otto Real Estate v. Shelter Investments, 106 Ill.Dec. 644 (Ill.App. 4 Dist.1987). In Otto Real Estate, the defendants hired a real estate broker to sell two apartment properties together. Otto Real Estate, 106 Ill.Dec. at 645. The defendants agreed to pay the broker a commission of $50,000 if he could sell both properties at an aggregate price of $2,900,000. The broker arranged for the sale of only one of the properties for $2,020,000--a service different than that expressly agreed upon by the parties.
 
 
 37
 The court in Otto Real Estate recognized the general rule prohibiting quasi-contractual relief when a definite contract on the same subject exists between the parties. Id. at 646. But the court found the general rule inapplicable, reasoning that the partial sale "represented a new contract, implied in fact, under which plaintiff may claim recovery." Id. at 647. In reaching that conclusion, the court found Moylan v. Estes, 102 So.2d 855 (Fla.App.1958) instructive. Id. There, in a situation similar to Otto, a Florida court concluded that the broker "could not be denied a commission simply because the parties reached a different agreement than that originally entered." Id.
 
 
 38
 Unlike the plaintiff-brokers in Otto Real Estate and Moylan, Conway has not provided a service to Alpha different from that which was the subject of the express contract. Conway did not, for example, make a partial sale of Alpha's businesses. Nor did Conway perform any services or assume any duties different from those contemplated under the express agreement. Cf. ITT Federal Support Services, 531 F.2d at 528 (no implied contract because services provided were not different from those provided for under parties' express contract). The subject matter of the contract was Conway's provision of brokerage services for the sale of Alpha. Conway provided brokerage services but failed to meet the conditions specified in the contract under which Conway would be entitled to a fee. On the facts of this case, the Court cannot find an implied contract concerning subject matter different from the subject matter of the express contract between the parties.[4] Count III is dismissed.[5]
 
 
 39
 Finally, Defendants Delta and Omega argue that even if the Court concludes that Conway has stated a claim for breach of an implied in law contract, such a theory of recovery is inapplicable to them because neither entity received any benefit from the sale of Alpha to The Lewis Company. Since Conway has failed to state a claim for breach of an implied in law contract, the Court need not decide whether Delta and Omega benefitted from the sale.
 
 Enter:
 
 40
 /s/ James B. Zagel
 
 James B. Zagel
 United States District Judge
 
 41
 Date: 19 March 1993.
 
 
 
 *
 The Honorable Michael M. Mihm, Chief Judge of the Central District of Illinois, is sitting by designation
 
 
 [1]
 Even if the Court were to conclude that the sale occurred in December 1990 when the parties executed the stock purchase agreement, the result would be the same; the sale would still have occurred more than twelve months after Conway first approached The Lewis Company
 
 
 [2]
 The court in ITT Federal Support Services, 531 F.Supp. at 528, recognized the potential for abusive risk shifting if an express and implied in fact contract dealing with the same subject were allowed to coexist. Accordingly, the court refused to allow the plaintiff to recover additional compensation for post-termination work under an implied in fact contract when the plaintiff's express contract with the government covered the subject of compensation for post-termination work
 
 
 [3]
 Conway makes the same argument in connection with its claim in Count II. The Court rejects the argument as it relates to Count II for the same reasons stated with respect to Count III
 
 
 [4]
 Conway contends that the subject matter of the express contract is defined by the contractual time limits for the sale. From this premise, Conway argues that the sale that occurred after the twelve month time period forms the basis for a new and different contract arising by implication. We disagree. The subject matter of the express contract is not defined by the contracts term or entitlement to fee provision. Those terms merely set the temporal scope of the contract
 
 
 [5]
 Conway's reliance upon Edens View Realty & Investment, Inc. v. Heritage Enterprises, Inc., 42 Ill.Dec. 360 (Ill.App.1 Dist.1980), is misplaced. The court in Edens View Realty stated that "in Illinois, a plaintiff may recover under quantum meruit on a claim made under an express contract ... where the plaintiff fails to establish the express contract but does show that in fact services were rendered. Edens View Realty, 42 Ill.Dec. at 365 (emphasis supplied). Edens View Realty is inapposite here because there is no question that the parties entered into an express contract. Indeed, Conway attached the contract as an exhibit to the Amended Complaint