BARRY MOGUL AND ASSOCIATES, INC., Plaintiff and Counterdefendant-Appellant and Cross-Appellee, v. TERRESTRIS DEVELOPMENT COMPANY, Defendant and Counterplaintiff-Appellee and Cross-Appellant.

Second District    No. 2—93—1134

Opinion filed November 21, 1994.

Jay A. Canel, William H. Jones, and Peter M. King, all of Canel, Davis & King, of Chicago, for appellant.

David I. Herbst and Lori A. Goldstein, both of Holleb & Coff, of Chicago, for appellee.

JUSTICE QUETSCH delivered the opinion of the court:

Plaintiff, Barry Mogul & Associates, Inc., brought this action against defendant, Terrestris Development Company, seeking recovery of a broker's commission allegedly due in connection with the sale of a certain parcel of land located in Lincolnshire. Defendant filed a five-count counterclaim alleging: breach of fiduciary duty (count I), negligent misrepresentation (count II), violation of the Real Estate License Act of 1983 (225 ILCS 455/1 *et seq.* (West 1992)) (count III), fraudulent misrepresentation (count IV), and violation of the

Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 1992)) (count V). The case proceeded to a jury trial on count I of plaintiff's amended complaint seeking recovery pursuant to a written commission agreement and on all five counts of the counterclaim. Prior to trial the trial court dismissed count II of plaintiff's amended complaint, which sought recovery in *quantum meruit,* pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1992)). The jury returned verdicts in favor of defendant on count I of plaintiff's amended complaint and in favor of plaintiff on defendant's counterclaim.

On appeal plaintiff contends that the trial court erred in dismissing count II of its amended complaint seeking recovery in *quantum meruit.* Plaintiff further contends that the trial court erred in denying its post-trial motion for entry of a judgment notwithstanding the verdict or, alternatively, for a new trial, on count I of its amended complaint. Defendant cross-appeals seeking a new trial on its counterclaim. Defendant contends that the trial court committed error in excluding certain evidence and refusing to give certain jury instructions.

According to the allegations of plaintiff's original and amended complaints, plaintiff is a commercial real estate brokerage firm and defendant is in the business of developing real estate. Late in 1988 or early in 1989, representatives of plaintiff and defendant discussed the possibility of plaintiff procuring a buyer for a parcel of land in Lincolnshire owned by defendant. Shortly thereafter, plaintiff introduced a prospective buyer, Baxter Homes, Inc. (Baxter), to defendant. Plaintiff worked closely with defendant and Baxter to accomplish a sale of the property. On March 23, 1989, representatives of defendant and Baxter signed a letter of intent documenting their intention to enter into an agreement for the sale of the property to Baxter for the sum of $6,480,000 and on May 23, 1989, defendant and Baxter executed a real estate sale agreement.

Defendant sent plaintiff a letter agreement, dated May 10, 1989, and signed by defendant's president, Dennis Cortesi, which provided, in pertinent part:

"This will confirm our agreement concerning the broker's commission ('Commission') which shall become due upon sale of the [Lincolnshire property] pursuant to an agreement executed or to be executed by and between the undersigned, as Seller, and Baxter Homes, as Purchaser (the 'Agreement').

In consideration of services rendered by you as real estate broker in connection with the captioned transaction, and as procuring cause thereof, we hereby agree to pay you, if Closing as defined in

the Agreement shall occur, an amount equal to five percent (5%) of all monies received by or credited to the Seller.

\* \* \*

The terms and conditions contained herein shall supercede any prior discussions and agreements between us and shall constitute the sole and entire agreement between us with respect to the [Lincolnshire property]. *This letter agreement shall not be amended or modified except in writing executed by us* \*\*\*."

Plaintiff's president signed the commission agreement on plaintiff's behalf on May 24, 1989.

Plaintiff alleged that defendant and Baxter were unable to complete the sale in accordance with the terms of their May 24, 1989, agreement because of delays in obtaining zoning approval for Baxter's proposed development of the property and because of "the subsequent decreasing availability of capital." Plaintiff alleged, however, that defendant and Baxter ultimately proceeded with the sale, which "was structured through a series of limited partnership deals" and defendant or an entity controlled by defendant received $4,730,000 in cash and an "equity interest" (the complaint does not specify in what) worth at least $2,480,000.

In count I of its original complaint, plaintiff alleged it performed all of the conditions it was required to perform under the May 24, 1989, commission agreement and was entitled to a commission in the amount of $324,000. In count II, plaintiff alleged that it was the procuring cause of the sale and sought recovery in *quantum meruit*. Defendant moved to dismiss count II pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1992)). In support of its motion, defendant pointed out that count II incorporated allegations showing that an express contract existed governing plaintiff's right to a commission. Defendant argued that the existence of an express contract precluded recovery in *quantum meruit*; plaintiff's recovery, if any, must be in accordance with the contract. The trial court granted the motion to dismiss, but granted plaintiff leave to amend.

Plaintiff thereafter amended its complaint. In count II plaintiff added the following allegations:

"12. \*\*\* [I]f 'closing as defined in the agreement,' as stated in the [commission agreement] did not occur, the commission agreement was null and void and was no longer in force when the sale was ultimately consummated.

13. \*\*\* [I]f the transfer of property from [defendant] to a nominee limited partnership that it controlled affected [plaintiff's] right to recover under the May 24, 1989[,] commission agreement, it did so at the moment of such transfer, and would have rendered

the commission agreement null and void and no longer in force at that moment.

14. *** [I]f the structure of the transaction, through a limited partnership, affected [plaintiff's] right to recover under the Commission agreement, it did so when the transaction became so structured and would have rendered the commission agreement null and void and no longer in force at that moment.

15. *** Despite any failure of the parties to proceed in strict accordance with the precise terms of an 'agreement' to which the May 24, 1989[,] commission agreement refers, or with the commission agreement itself, [plaintiff] was the procuring cause of the sale of the subject property from [defendant] to Baxter."

Defendant moved to dismiss count II pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1992)). Defendant argued that the allegations in paragraphs 12, 13, and 14 were improper conclusions of law and count II did not establish that the commission agreement had become null and void. Therefore, according to defendant, plaintiff could not recover in *quantum meruit*. Defendant also argued that plaintiff was not entitled to recovery as the procuring cause of a transaction between defendant and Baxter where the conditions of the commission agreement had not been performed.

The trial court granted defendant's motion to dismiss count II. Evidence adduced at trial established that after defendant and Baxter entered into their May 23, 1989, agreement for the sale of the property, their representatives worked together to have the property rezoned to accommodate Baxter's plans to develop the property. However, when the rezoning was accomplished, Baxter informed defendant that Baxter lacked funds or the ability to obtain financing to complete the purchase of the property. Baxter had obtained a loan commitment for funds to purchase and develop the property, but a condition of the loan commitment was that Baxter obtain a $2.5 million equity investment in the project, and Baxter had been unable to find an equity investor. Eventually, defendant and Baxter agreed to the formation of Rivershire Club Associates Limited Partnership (Rivershire) to develop the property. Defendant's participation as equity investor would enable Rivershire to obtain a loan to develop the property.

In connection with the formation of Rivershire, defendant conveyed the property to a limited partnership of which it was general partner, Milday Associates Limited Partnership (Milday Associates). Milday Associates and Baxter then formed Rivershire with Baxter as general partner and Milday Associates as the sole

limited partner. Milday Associates transferred the property to Rivershire as a capital contribution. Rivershire received a partial disbursement of its loan. Part of the disbursement was used to pay the balance of the existing mortgage on the property. It appears that part of the loan disbursement was distributed to Milday Associates.

At the close of all evidence, both parties moved for directed verdicts and the motions were denied. The jury returned verdicts in favor of defendant on count I of plaintiff's complaint and in favor of plaintiff on all counts of defendant's counterclaim.

■ We first consider whether the trial court erred in dismissing count II of plaintiff's amended complaint which sought recovery under a *quantum meruit* theory. The trial court dismissed count II pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1992)), which provides a procedure for dismissal based on certain defects or defenses. Where the grounds of the motion do not appear on the face of the pleading attacked, the motion shall be supported by affidavit. Under section 2—619(a)(9), a defendant may move for dismissal on the basis that the challenged claim is barred by an "affirmative matter avoiding the legal effect of or defeating the claim." (735 ILCS 5/2—619(a)(9) (West 1992).) A motion to dismiss under section 2—619 admits all well-pleaded facts together with all reasonable inferences which can be gleaned from those facts, but does not admit conclusions of law or conclusions of fact unsupported by allegations of specific facts on which such conclusions rest. (*Regan v. Ivanelli* (1993), 246 Ill. App. 3d 798, 803.) " '[A]ffirmative matter,' in a section 2—619(a)(9) motion, is something in the nature of a defense which negates the cause of action completely or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint." *Illinois Graphics Co. v. Nickum* (1994), 159 Ill. 2d 469, 486; see also *Heller Equity Capital Corp. v. Clem Environmental Corp.* (1992), 232 Ill. App. 3d 173, 178.

■ Defendant's motion to dismiss was principally directed at the allegations that the commission agreement had become "null and void" because of the occurrence of certain events. Defendant contended that these allegations were improper conclusions of law. While defendant submitted an affidavit and deposition excerpts in support of its motion, the defect complained of is apparent from the face of the record, and, in substance, defendant's motion is a challenge to the legal sufficiency of count II. As such, defendant arguably should more properly have moved for dismissal under section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1992)). While section 2—619 motions, like those under section 2—615, attack defects appearing on the face of the pleadings, that

ground should be coupled in the motion with a ground based on matter not appearing of record. (*Nickum*, 159 Ill. 2d at 485.) However, our supreme court has recognized that the courts have not limited section 2—619 in this manner, and there is, in practice, some degree of overlap between motions to dismiss brought under section 2—615 and those brought under section 2—619. (*Nickum*, 159 Ill. 2d at 469.) Moreover, the distinction between an "affirmative matter" consisting of "something in the nature of a defense which *** refutes crucial conclusions of law" (*Nickum*, 159 Ill. 2d at 486) and a challenge to the legal sufficiency of the complaint may often be elusive. To the extent the dismissal of count II would have been proper under section 2—615, we will not reverse merely because defendant mistitled the motion. Accord *Weber v. Weber* (1979), 77 Ill. App. 3d 383, 385.

While in its amended complaint plaintiff "alleged" that the commission agreement between plaintiff and defendant had become "null and void," plaintiff has not pursued this theory on appeal. Instead, plaintiff maintains that the existence of an express agreement governing its right to a commission does not preclude *quantum meruit* recovery. As explained below, we agree with defendant that *quantum meruit* recovery is not available under the circumstances of this case.

■ A broker is an agent contracted to act at the behest of a principal in a transaction involving some disposition of property. (*Bennett & Kahnweiler Associates v. Ratner* (1985), 133 Ill. App. 3d 316, 319.) Generally, the employment agreement determines the broker's compensation for his actions on behalf of his principal. (*Ratner*, 133 Ill. App. 3d at 319.) It has been stated that "[a] broker may *** be denied the right to commissions on a transaction concluded by his employer with a customer produced by the broker, on different terms from those stipulated in his employment contract, where his right to compensation is subject to special conditions in the contract which are not performed." 12 Am. Jur. 2d *Brokers* § 225 (1964); see also Restatement (Second) of Agency § 447 (1958).

■ Plaintiff seeks to circumvent this result by resort to the theory of *quantum meruit*. The term *quantum meruit* means literally "as much as he deserves" and is an expression that describes the extent of liability on a contract implied in law (also called a "quasi-contract"); it is predicated on the reasonable value of the services performed. (*Century 21 Castles by King, Ltd. v. First National Bank* (1988), 170 Ill. App. 3d 544, 548.) Recovery in such cases is founded on the implied promise of the recipient of services to pay for something which he has received that is of value to him. (*Century 21*, 170 Ill. App. 3d 544.) The theory of recovery in *quantum meruit* is

that the defendant has received a benefit which would be unjust for him to retain without paying for it. (*Van C. Argiris & Co. v. FMC Corp.* (1986), 144 Ill. App. 3d 750, 753.) Quasi-contractual relief is available when one party has benefited from the services of another under circumstances in which, according to the dictates of equity and good conscience, he ought not retain such benefit. *Board of Directors of Carriage Way Property Owners Association v. Western National Bank* (1985), 139 Ill. App. 3d 542, 548.

■ A contract implied in law exists from an implication of law that arises from facts and circumstances independent of an agreement or consent of the parties; the intention of the parties is entirely disregarded. (*Century 21*, 170 Ill. App. 3d at 548.) Thus, it has been observed that "[t]he implied in law contract is indeed no contract at all, it is simply a rule of law that requires restitution to the plaintiff of something that came into the defendant's hands but belongs to the plaintiff in some sense." (D. Dobbs, Handbook on the Law of Remedies § 4.2, at 235 (1973) (hereinafter Dobbs).) As will become apparent below, it is important to distinguish a contract implied in law (quasi-contract) from a contract implied in fact. A contract implied in fact is an actual contract; the only difference between an express contract and a contract implied in fact is that in the former the parties arrive at their agreement by words, either written or oral, while in the latter their agreement is arrived at by a consideration of their acts and conduct. *Century 21 Castles,* 170 Ill. App. 3d at 548; see Dobbs, § 4.2, at 235.

■ It is well established, as a general rule, that a plaintiff cannot pursue a quasi-contractual claim where there is an enforceable express contract between the parties. (See, *e.g.,* *Zadrozny v. City Colleges* (1991), 220 Ill. App. 3d 290, 295; *Prodromos v. Poulos* (1990), 202 Ill. App. 3d 1024, 1032; *Board of Directors of Carriage Way Property Owners Association v. Western National Bank* (1985), 139 Ill. App. 3d 542, 547.) In *Industrial Lift Truck Service Corp. v. Mitsubishi International Corp.* (1982), 104 Ill. App. 3d 357, the court explained the basis for this general rule:

> "Difficulties arise with quasi-contractual claims when there is an express contract between the parties. The general rule is that no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests. [Citations.] The reason for this rule is not difficult to discern. When parties enter into a contract they assume certain risks with an expectation of a return. Sometimes, their expectations are not realized, but they discover that under the contract they have assumed the risk of having

those expectations defeated. As a result, they have no remedy under the contract for restoring their expectations. In desperation, they turn to quasi-contract for recovery. This the law will not allow. Quasi-contract is not a means for shifting a risk one has assumed under contract." *Industrial Lift*, 104 Ill. App. 3d at 360-61.

See also *Batler, Capitel & Schwartz v. Tapanes* (1987), 164 Ill. App. 3d 427, 430.

■ In the case at bar, plaintiff voluntarily assumed the risk that "Closing" as defined in the sale agreement between defendant and Baxter would not occur and that plaintiff would go without compensation for its efforts even though defendant might derive some benefit from those efforts. Presumably, plaintiff and defendant were negotiating at arm's length and plaintiff had the ability to demand a commission reflecting what it considered an appropriate premium for that risk. Plaintiff may not resort to a quasi-contractual theory to avoid a risk assumed under an express contract. Our conclusion that plaintiff may not pursue quasi-contractual relief finds support in section 447 of the Restatement (Second) of Agency, which states that "[a]n agent whose compensation is conditional upon procuring a transaction on specified terms is not entitled to such compensation if, as a result of his efforts, a transaction is effected on different or modified terms, *although the principal thereby benefits*." (Emphasis added.) Restatement (Second) of Agency § 447 (1958).

In arguing that the express contract between the parties does not bar recovery in *quantum meruit*, plaintiff relies principally on *Otto Real Estate, Inc. v. Shelter Investments* (1987), 153 Ill. App. 3d 756. However, despite plaintiff's staunch protests to the contrary, defendant correctly observes that in *Otto* recovery was not permitted under a contract implied in law (*i.e.,* quasi-contract) but was instead allowed under a contract implied *in fact*. Indeed, the *Otto* court specifically stated that "quasi-contractual relief is not available when a definite contract between the parties exists." (*Otto*, 153 Ill. App. 3d at 759.) Moreover, the court held that the trial court had erred in calculating damages on a theory of *quantum meruit. Otto*, 153 Ill. App. 3d at 756.

Although we disagree with plaintiff's argument that *quantum meruit* recovery is available, since plaintiff contends that this case is factually analogous to *Otto*, where recovery on a contract implied in fact was permitted, we consider whether plaintiff might recover on a contract implied in fact in the case at bar. Even though count II of plaintiff's amended complaint purports to seek recovery under the rubric of *quantum meruit*, if the well-pleaded facts state a viable cause of action on a contract implied in fact, plaintiff should be

permitted to proceed under that theory. (See *Century 21 Castles*, 170 Ill. App. 3d at 548-49.) We conclude, however, that the facts of this case do not permit recovery under the theory of a contract implied in fact.

In *Otto*, the owner of two apartment complexes agreed to pay a real estate agency a commission or finder's fee of $50,000 if the agency procured a buyer who would purchase both properties at an aggregate price of $2,900,000. The agency contacted a prospective purchaser who ultimately purchased only one of the properties. On appeal, the court held that even though the agency did not produce a purchaser for both properties it could recover under an implied-in-fact contract. The court purported to rely on passages from Professor Corbin's treatise on contract law. Section 564 of Corbin on Contracts provides:

> "The statement is frequently found that where the parties have made an express contract the law will not imply one. This is a misleading statement, even though some truth is concealed within it. It is more accurate, even though not very useful as a working rule to say that where the parties have made an express contract, the court should not find a different one by 'implication' concerning the same subject matter if the evidence does not justify an inference that they intended to make one. Of course, even in the absence of any express promise or contract, an implied promise or contract should not be found to exist unless the conduct of the parties, under the existing circumstances, makes such an inference or implication reasonable. But the fact that an express contract has been made does not prevent the parties from making another one tacitly, concerning the same subject matter or a different one." 3 A. Corbin, Corbin on Contracts § 564, at 292-93 (1960) (hereinafter Corbin).

The *Otto* court (153 Ill. App. 3d at 760) also quoted the following passage:

> "The fact that an express contract for a commission was made between principal and agent does not prevent the finding of a different promise by implication where the services contemplated in the express contract were never rendered. The acceptance by the principal of a different service, knowing that the agent expected pay for rendering it, justifies the finding of a promise to pay at a reasonable rate." Corbin, § 567, at 318.

The *Otto* court reasoned that "[w]hile defendants may have been able to reject any offer for sale and owe plaintiff nothing if both properties at a specified price were not included in the transaction, defendants did execute a partial sale which represented a new contract, implied in fact, under which plaintiff may claim recovery."

(*Otto*, 153 Ill. App. 3d at 760-61.) We have no quarrel with the principles set forth in the above passages from Professor Corbin's treatise. However, to the extent *Otto* stands for the proposition that a contract implied in fact *necessarily* arises whenever a principal concludes *any* transaction with a party to whom it was introduced by its agent, we disagree and decline to adopt the *Otto* court's reasoning.

■ In the case at bar, applying the reasoning set forth in Professor Corbin's treatise does not produce a favorable result for plaintiff. Professor Corbin observes that the existence of an express contract does not prevent the parties from making another one tacitly concerning the same subject. However, as defendant notes, that observation is qualified by the principle that "promises should not be found by process of implication if they would be inconsistent with express provisions that there is no reason to set aside or to hold inoperative." (Corbin, § 564, at 297.) A finding of an implied contract to compensate plaintiff would be inconsistent with the terms of the parties' express agreement pursuant to which plaintiff's right to a commission was made conditional upon procuring a sale on specified terms.

Moreover, Professor Corbin's observation that an express contract for a commission does not preclude the finding of a different promise by implication where different services are rendered also does not apply here. Professor Corbin's treatise indicates that "[t]he acceptance by the principal of a different service, *knowing that the agent expected pay for rendering it*, justifies the finding of a promise to pay at a reasonable rate." (Emphasis added.) (Corbin, § 567, at 318.) In the case at bar, plaintiff did not perform a service different from the service it was engaged to perform; it endeavored to procure a purchaser on the terms specified by defendant, but simply failed to do so. Moreover, nothing in the allegations of the complaint suggests that plaintiff had any reason to expect that it would receive payment for services different from those specified in its contract.

Plaintiff also relies on cases holding that a broker who is the procuring cause of a sale may recover a commission even though the contract for sale was executed or the sale completed after the expiration of the broker's listing agreement and any subsequent "grace period." (*Bennett & Kahnweiler Associates v. Ratner* (1985), 133 Ill. App. 3d 316; *Herb Fox, Ltd., Realtors v. Stewart* (1980), 91 Ill. App. 3d 201; *Pilson v. Roush* (1980), 82 Ill. App. 3d 187.) The obstacle to recovery in the case at bar is not the failure to procure during the term of plaintiff's agency, but the failure to procure a sale on specified terms which were a condition of the broker's right to a commission. The principles applicable in this setting are those previously discussed; the "procuring cause" cases cited by plaintiff do not apply.

We therefore conclude that count II of plaintiff's amended complaint was inherently defective as a matter of law and was properly dismissed.

■ We turn now to plaintiff's argument that the trial court erred in denying its post-trial motion for judgment notwithstanding the verdict, or, in the alternative, for a new trial, on count I of its amended complaint. Count I sought recovery pursuant to the terms of the commission agreement between plaintiff and defendant. We have already recited the principle that an agent whose compensation is subject to a clearly expressed condition that he procure a transaction on specified terms is not entitled to compensation if as a result of his efforts a transaction is effected on different or modified terms. Restatement (Second) of Agency § 447 (1958) (and Comment *a* thereto); see also 12 Am. Jur. 2d *Brokers* § 225 (1964).

The commission agreement here states that defendant would pay a 5% commission "if Closing as defined in the Agreement shall occur." This form of language clearly expresses a condition. (See generally Restatement (Second) of Contracts § 226, Comment *a*, at 170; § 227, Illustration 4, at 177 (1981).) Accordingly, the question of fact to be resolved at trial was whether this condition occurred. The evidence adduced at trial supports the jury's determination that it did not. The evidence shows that defendant did not complete a sale of the property to Baxter pursuant to the agreement referred to in the commission agreement; defendant and Baxter were unable to complete the sale because of Baxter's inability to secure financing. Instead, defendant, through an affiliated limited partnership (*i.e.* Milday Associates) formed a limited partnership with Baxter to develop the property. This transaction bears an insufficient resemblance to the cash sale contemplated in the original real estate sale agreement between defendant and Baxter to satisfy the condition of the commission agreement. This is true even to the extent that in connection with the formation of Rivershire defendant or Milday Associates may have received a cash distribution.

Judgment notwithstanding verdict should be entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510; *E.J. McKernan Co. v. Gregory* (1993), 252 Ill. App. 3d 514, 543.) On a motion for a new trial the court will weigh the evidence and set aside the verdict and order a new trial if the verdict is contrary to the manifest weight of the evidence. (*Maple v. Gustafson* (1992), 151 Ill. 2d 445, 454.) Here the evidence does not overwhelmingly favor

plaintiff, nor is the jury's verdict in favor of defendant contrary to the manifest weight of the evidence. Accordingly, the trial court properly denied plaintiff's post-trial motion for judgment notwithstanding verdict or, alternatively, for a new trial.

■ Plaintiff also contends that it was entitled to a new trial because the trial court erred in denying its motion for a directed verdict on defendant's counterclaim. Plaintiff argues that allowing the counterclaim to go to the jury was prejudicial and caused the jury to return compromise verdicts. In contravention of Supreme Court Rule 341(e)(7) (145 Ill. 2d R. 341(e)(7)), plaintiff cites no authority for the proposition that the failure to direct a verdict on a counterclaim can engender prejudice to the plaintiff with respect to his or her principal claim. As discussed above, the jury's verdict is supported by the evidence, and we will not engage in speculation that the jury based its verdict on considerations other than the evidence. Accordingly, the judgment against plaintiff will be affirmed.

■ We next consider defendant's cross-appeal. Defendant contends that the trial court erred in excluding certain evidence and in refusing certain jury instructions. Plaintiff responds that defendant's failure to file a post-trial motion precludes it from raising these issues on appeal. We agree. Defendant's failure to file a post-trial motion following the jury trial amounted to a failure to preserve any matters for review. (*In re Parentage of Kimble* (1990), 204 Ill. App. 3d 914, 916; *Hladish v. Whitman* (1989), 192 Ill. App. 3d 561, 566.) Defendant cites *Chand v. Schlimme* (1990), 138 Ill. 2d 469, for the proposition that no post-trial motion was necessary to preserve issues for appeal. Defendant's reliance on *Chand* is misplaced.

In *Chand* the appellant initially received a favorable jury verdict, but the trial court entered judgment notwithstanding the verdict in defendant's favor. The issue in *Chand* was not whether the plaintiff had properly preserved issues for appeal, but whether her notice of appeal was timely. However, in the course of its analysis, our supreme court commented, without elaboration, that the plaintiff was permitted to file a post-trial motion challenging the trial court's entry of judgment notwithstanding verdict but was not required to do so to preserve the issue for appeal. Illinois' courts have long recognized a narrow exception excusing the failure to present a post-trial motion in a case tried before a jury where the trial court has *granted* a motion for a directed verdict (*Keen v. Davis* (1967), 38 Ill. 2d 280) and, also, where the order for which review is sought was entered following the discharge of the jury (*E.M. Melahn Construction Co. v. Village of Carpentersville* (1981), 100 Ill. App. 3d 544, 547; *cf. Takecare v. Loeser* (1969), 113 Ill. App. 2d 149, 151-52 (post-trial mo-

tion unnecessary to preserve issue of whether trial court erred in entering judgment contrary to the jury's verdict based on juror's statement as to the jury's actual intention)). The statement in *Chand* that no post-trial motion was necessary in that case is consistent with the foregoing principles, and we decline to read *Chand* as abolishing the general rule requiring the filing of a post-trial motion in a jury trial to preserve issues for appeal. Accordingly, the issues raised by defendant in its cross-appeal are waived.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

WOODWARD and PECCARELLI, JJ., concur.