2025 IL App (2d) 240479-U
No. 2-24-0479
Order filed September 11, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| BARNES ELECTRIC CONSTRUCTION, INC., | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee and Cross-Appellant, | ) ) | |
| v. | ) ) | No. 21-CH-280 |
| MARSHA L. FORSYTHE, Individually and as Trustee of the Marsha Lynn Forsythe Living Trust dated 8/26/21, | ) ) ) ) ) | |
| | ) | Honorable |
| Defendant-Appellant and Cross-Appellee. | ) ) | Daniel L. Jasica, Judge, Presiding. |

_____

JUSTICE MULLEN delivered the judgment of the court.
Presiding Justice Kennedy and Justice Jorgensen concurred in the judgment.

**ORDER**

¶ 1     *Held*:  (1) The trial court did not err in allowing plaintiff to recover under a theory of *quantum meruit*; (2) the trial court's award of damages under *quantum meruit* was not against the manifest weight of the evidence; (3) the trial court did not abuse its discretion in denying defendant's petition for attorney fees; (4) the trial court did not err in denying plaintiff's mechanics lien claim; and (5) plaintiff forfeited its challenge to the amount of damages awarded under its *quantum meruit* claim by failing to cite any authority in support thereof.

¶ 2                                    I. INTRODUCTION

¶ 3      Plaintiff, Barnes Electric Construction, Inc., filed a three-count complaint in the circuit court of Lake County seeking to recoup allegedly unpaid invoices related to electrical work it performed at the home of defendant, Marsha L. Forsythe, individually and as Trustee of the Marsha Lynn Forsythe Living Trust dated 8/26/21.[1] Count I of the complaint was for the foreclosure of a mechanics lien, count II was a claim for breach of contract, and count III sought recovery under a theory of *quantum meruit*. Following a bench trial, the trial court rejected plaintiff's claims for foreclosure of a mechanics lien and for breach of contract. However, the court found in favor of plaintiff on the *quantum meruit* count and awarded plaintiff $217,468.88. Subsequently, defendant moved to reconsider the trial court's ruling and filed a petition for attorney fees. The trial court denied both filings. Defendant now appeals, challenging that portion of the trial court's ruling granting plaintiff relief under a theory of *quantum meruit* and denying her posttrial request for attorney fees. In addition, plaintiff has filed a cross-appeal, challenging the amount of damages awarded as well as the trial court's denial of its mechanics lien claim. We affirm.

¶ 4                              II. STATEMENT OF FACTS

¶ 5                                    A. Background

¶ 6      Early in 2015, Forsythe purchased a single-family residence located on Old McHenry Road in Long Grove, Illinois (Old McHenry Residence). At the time of purchase, the Old McHenry Residence consisted of a main house of approximately 14,000 square feet and an attached eight-car garage. Prior to moving in, Forsythe began an extensive, multi-year project to remodel and

---

[1] In 2022, title to the home was transferred from Martha L. Forsythe, individually, into the Marsha Lynn Forsythe Living Trust dated 8/26/21, for which Forsythe serves as the sole trustee and primary beneficiary. We will refer to Martha L. Forsythe individually as "Forsythe" and the Martha Lynn Forsythe Living Trust individually as the "Trust." We will refer to Forsythe and the Trust collectively as "defendant."

expand the Old McHenry Residence. To that end, Forsythe retained the services of an architect, interior designers (Kelly Guinaugh and Gail Drury), a kitchen designer, and a project manager (Brad Brechel, who was later replaced by Al Kitchens).

¶ 7    Robert Barnes (Barnes) is the chief executive officer and owner of plaintiff, an electrical contractor. Barnes has known Forsythe since approximately 2010 because plaintiff performed work in the past for the Forsythe family and the family's business.

¶ 8    Forsythe hired John Marshall Construction, Inc. (Marshall Construction) to serve as the general contractor for the project to remodel the Old McHenry Residence. Forsythe contacted Barnes about plaintiff doing the electrical work. Plaintiff submitted a bid to Marshall Construction and was eventually hired as the electric subcontractor.[2] Plaintiff began working on the Old McHenry Residence in 2015. Plaintiff originally bid its work as a subcontractor for a fixed fee of $74,500. However, due to changes in the scope of work, the subcontract price rose and, as of June 2016, Marshall Construction had paid plaintiff more than $200,000 for electrical work at the Old McHenry Residence. During the time plaintiff was working at the Old McHenry Residence, it also served as the electrical contractor for work on Forsythe's sister's home and another residence owned by Forsythe on Bridlewood Court in Long Grove (Bridlewood Property).

¶ 9    In 2016, while work at the Old McHenry Residence was still ongoing, Barnes, Marshall Construction, and Forsythe (via Brechel) agreed that plaintiff would enter into a direct relationship with Forsythe to provide electrical contracting services on a going-forward basis at the Old McHenry Residence. This was done to eliminate a markup fee that Marshall Construction included

---

[2]Plaintiff was also hired by Marshall Construction under a separate subcontract to provide electrical work for a new detached garage and apartment suite that was to be built adjacent to the Old McHenry Residence. The subcontract for the detached garage is not the subject of the underlying lawsuit or this appeal.

for all subcontractor work, a cost that was passed on to Forsythe. At that time, Barnes and Brechel allocated certain remaining work as either (1) work to be paid for by Marshall Construction under the existing subcontract with plaintiff or (2) additional work that would be billed directly by plaintiff to Forsythe. Although plaintiff continued to perform electrical work on the project until May 2020, Forsythe moved into the Old McHenry Residence in August 2018, at which time the major remodeling work was completed and the house was livable.

¶ 10                                        B. Complaint

¶ 11     On August 5, 2021, plaintiff filed a complaint naming Forsythe as the sole party defendant. The complaint was later amended multiple times, during which the Trust was added as a party defendant.[3] According to the allegations of plaintiff's third-amended complaint, on or about May 3, 2016, plaintiff entered into an oral contract with Forsythe to provide electrical construction, labor, and materials "on a time and material basis." On November 1, 2016, plaintiff issued an account statement, invoice #1318, to Forsythe displaying the amount then due as $198,758.82. Against the charges contained in invoice #1318, Forsythe paid plaintiff the sum of $120,000, leaving a balance due on the invoice of $78,758.82. Forsythe did not contest in writing any of the specific charges in invoice #1318. Thereafter, plaintiff continued to provide electrical work and materials at the direction of Forsythe. In turn, plaintiff issued invoices to Forsythe describing the services provided and the costs therefor. Plaintiff completed its work on the Old McHenry Residence on May 4, 2020. On May 5, 2020, plaintiff provided Forsythe a second account

---

[3]When the complaint was originally filed, Forsythe, individually, was the legal title holder of the Old McHenry Residence. As noted earlier, Forsythe subsequently transferred title to the Old McHenry Residence into the Trust. Following the close of proofs in the trial of this matter, plaintiff filed a motion to amend its complaint to conform to the proofs and add the Trust as a named party defendant. The trial court allowed the motion to amend, and plaintiff filed its third-amended complaint.

statement, invoice #1451, which carried over the balance due on invoice #1318 and listed invoice charges incurred since December 2016. Invoice #1451 reflected a balance due of $365,580.95. However, invoice #1451 contained an accounting error in which a payment of $49,859.51 was double credited. Accordingly, the correct balance due for the invoices listed as unpaid or partially paid on invoice #1451 should have been $415,440.46. Forsythe did not submit any additional payments. On September 1, 2020, plaintiff filed in the Office of the Recorder of Deeds of Lake County a notice and claim for a mechanics lien in the amount of $365,580.95.

¶ 12    The third-amended complaint contained three counts. Count I sought foreclosure of the mechanics lien. Count II sought recovery for breach of contract and prayed for judgment against defendant in the sum of $415,440.46, plus interest and costs. Count III sought recovery under a theory of *quantum meruit*, contending that, if the court finds the absence of a verbal contract, defendant had been unjustly enriched by the electrical work performed by plaintiff.

¶ 13    Defendant answered the third-amended complaint. Defendant's answer contained two affirmative defenses: failure to join a necessary party (the Trust) until after the trial was conducted and lack of jurisdiction. At no point did defendant file a counterclaim.

¶ 14                                C. Trial and Ruling

¶ 15    The matter was heard at a bench trial before Judge Daniel L. Jasica. The trial was held over the course of several dates in November 2023. Three individuals testified at the trial: Barnes, Forsythe, and Darci Carlino (an employee of Idlewood Electric, an electrical supply company). At the trial, Barnes's and Forsythe's testimony focused on the work that was performed by plaintiff at the Old McHenry Residence and the charges listed on the unpaid invoices for which plaintiff was seeking to recover.

¶ 16    On April 26, 2024, Judge Jasica issued an extensive, 31-page written memorandum opinion and posttrial judgment order. Ultimately, Judge Jasica rejected plaintiff's claims for foreclosure of a mechanics lien (count I) and for breach of contract (count II). However, he found in favor of plaintiff and against defendant on the *quantum meruit* claim (count III) and awarded plaintiff $217,468.88.

¶ 17    In his ruling, Judge Jasica initially commented on the credibility of the witnesses and the nature of the evidence presented. Judge Jasica recognized that as the remodeling project was advancing, plaintiff was repeatedly asked to perform an ever-increasing amount of additional work. Judge Jasica found that Barnes testified credibly that tasks plaintiff had completed had to be redone because of changes made by the interior designers or because Forsythe was unhappy with the results of the lighting as originally planned. However, Judge Jasica also observed that during large portions of testimony, Barnes's attorney "had to blatantly lead his client to solicit the testimony he sought." Judge Jasica found that this "extensive leading *** undercut Barnes' [*sic*] credibility and recollection of events to a degree." Judge Jasica also noted that plaintiff did not keep very formal or organized records of either the time worked by each of its employees or the location at which each employee worked on any given day. He found "troubling" that an "inordinate number" of entries on the invoices for which plaintiff sought to recover appeared duplicative of other charges for the same work performed, involved work performed for the Bridlewood Property or the detached garage (which was the subject of a separate contract not at issue in this case), or was duplicative of specific workers' time billed to Forsythe's sister (who also had a remodeling project going on at the same time with plaintiff serving as the electrical contractor).

¶ 18    Additionally, Judge Jasica found "equally problematic" Forsythe's testimony regarding "what work was or was not discussed and agreed to by her representatives." Judge Jasica stressed that Brechel, Kitchens, Guinaugh, and Drury, the individuals who were at the worksite and would be most knowledgeable about the work performed by plaintiff during the remodel, did not testify at trial.

¶ 19    Regarding the breach-of-contract claim, Judge Jasica concluded that plaintiff had not met its burden to demonstrate that it had an oral contract with Forsythe in which she accepted or agreed to be billed on a time and material basis. Furthermore, Judge Jasica found that there was never an agreement on the price term of the contract between plaintiff and Forsythe, as there was conflicting testimony about the agreement being either for time and material pricing or for a fixed price.

¶ 20    Judge Jasica also ruled against plaintiff on its mechanics lien claim, finding that the existence of a contract was a prerequisite for a mechanics lien and there was no valid oral contract between plaintiff and Forsythe. Judge Jasica additionally explained that even if there had been a binding contract between the parties, plaintiff would still not have a valid mechanics lien claim because plaintiff had "grossly overstated" the amount of the mechanics lien. In support of this finding, Judge Jasica cited section 7 of the Mechanics Lien Act (Act) (770 ILCS 60/7 (West 2024)), which provides that no mechanics lien "shall be defeated to the proper amount thereof because of an error or overcharging on the part of any person claiming a lien therefor under this Act, unless it shall be shown that such error or overcharge is made with intent to defraud." Judge Jasica then stated:

> "Here, the Court finds, and at trial Barnes conceded, that there is significant and inexcusable double billing, billing for work not performed on the house, and work performed under different contracts all claimed in the lien amount of $356,580.95 [*sic*].

The Court concludes that errors this prevalent and pervasive cannot properly be characterized as simply honest mistakes, but smack of an attempt to improperly inflate the amount of the encumbrance. In fact, based on the Court's findings [addressing the *quantum meruit* claim], the lien amount is overstated by over 60%. The magnitude, numerosity, and open acknowledgment by Barnes of the impropriety of many of the items comprising the overstatement would compel the Court to infer intent and find constructive fraud, so as to defeat the mechanic's [*sic*] lien claim."

¶ 21 Finally, Judge Jasica ruled in favor of plaintiff and against defendant on the *quantum meruit* claim. Judge Jasica found that plaintiff performed a substantial amount of electrical contracting work at the Old McHenry Residence between April 2017 and May 2020 and that it would be "very unjust" to allow defendant to keep the benefit of the work without paying a reasonable value for the services rendered. Nevertheless, Judge Jasica found it to be a "challenge *** to determine the reasonable value of the service provided to [defendant] without inappropriately rewarding [plaintiff] for its sometimes sloppy recordkeeping and billing of its work." As such, Judge Jasica concluded that the only equitable way to accomplish this task was to use invoice #1451, the final invoice plaintiff submitted to Forsythe, and consider the work referenced on each line item or specific invoice referenced therein. After conducting this exercise, Judge Jasica disallowed certain charges because: (1) of a lack of proof; (2) the billing related to a different property (the Bridlewood Property or Forsythe's sister's house); (3) the charges were duplicative; (4) the work related to the detached garage (which was under a separate contract); (5) the charges were within the scope of the original contract but billed as "extras;" and (6) plaintiff's billing practices were sloppy. Ultimately, Judge Jasica disallowed almost $200,000 in charges, awarding a money judgment in favor of plaintiff and against defendant under count III in the amount of $217,468.88.

¶ 22                                  D. Posttrial Proceedings

¶ 23     On May 23, 2024, counsel for Forsythe entered an appearance for the Trust.[4] The following day, defendant filed two documents, a petition for attorney fees and a motion to reconsider. In the petition, defendant asserted that she was entitled to an award of attorney fees pursuant to section 17 of the Act (770 ILCS 60/17(c), (d) (West 2024)) because plaintiff's mechanics lien claim was brought "without just cause or right." In support of this argument, defendant cited the trial court's finding that plaintiff engaged in an "inordinate number" of improper billing practices that did not constitute "honest mistakes," including " 'inexcusable double billing, billing for work not performed on the [Old McHenry Residence], and work performed under different contract [*sic*] all claimed in the lien amount of $356,580.95 [*sic*].' " Defendant sought attorney fees in the amount of $80,160, which represented the full amount of attorney fees billed by the law firm representing defendant. In the motion to reconsider, defendant argued that the trial court erred in awarding damages to plaintiff based on a theory of *quantum meruit* because plaintiff had "unclean hands." Defendant contended that the doctrine of unclean hands bars plaintiff from recovering under a theory of *quantum meruit* where the trial court determined that plaintiff committed fraud against defendant.

¶ 24     In its response, plaintiff asserted that defendant's motion to reconsider and petition for attorney fees lacked merit and should be denied. Regarding the motion to reconsider, plaintiff asserted that the doctrine of unclean hands is an affirmative defense which must be set forth in a party's answer or reply to a complaint, but defendant never raised it as an affirmative defense. Plaintiff argued that the petition for attorney fees should be denied because the only party who can

---

[4]Recall that the Trust was not added as a party defendant until after the close of proofs and the trial court granted plaintiff leave to file its third-amended complaint.

request attorney fees under section 17(c) of the Act (770 ILCS 60/17(c) (West 2024)) is the "owner who contracted to have the improvements made and defended the action, but not those of any other party." Yet, the trial court found that there was no contract between the parties relating to the improvements at issue.

¶ 25    On July 18, 2024, Judge Jasica held a hearing on the posttrial filings. During the hearing, Judge Jasica asked defendant's attorney if there was a way to segregate the costs and fees associated with defending the mechanics lien count from the costs and fees related to the *quantum meruit* count. Defendant's attorney responded, "[t]here's really no way to do that, your Honor." Following argument by the parties, Judge Jasica denied both the motion to reconsider and the petition for attorney fees. With respect to the petition for attorney fees, Judge Jasica acknowledged his findings that plaintiff "grossly overstated" the amount of the mechanics lien and that the overstatement was more than an "honest mistake." Nevertheless, he noted that this case involved other claims and that he also found that equity required that defendant compensate plaintiff for the very substantial and uncompensated work that plaintiff did perform at the Old McHenry Residence. As such, Judge Jasica stated that he could not conclude that plaintiff's decision to pursue a mechanics lien claim was made in bad faith or unjustified as required by the attorney fees provision of the Act. See 770 ILCS 60/17(c), (d) (West 2024). Judge Jasica elaborated:

"The Court views [plaintiff's] failings in this regard as a failure of proof, that is, the Court found Mr. Barnes' [*sic*] testimony of the nature of the contractual relationship between [plaintiff] and [defendant] to be confused, conflated and contradictory specifically as to whether they had a time and materials contract or a fixed price contract.

Ultimately, [plaintiff] bore the burden of proof and the Court simply concluded that it had not met its burden through Barnes' [*sic*] conclusory testimony that Forsythe had

- 10 -

agreed to a time and materials contract. Still, [plaintiff] had a reasonable basis in fact and under the law for an extension or modification thereof to assert that it had a mechanic's [*sic*] lien claim against the property in the substantial amount based on the underlying alleged oral contract.

The court certainly took issue with the amount of the mechanic's [*sic*] lien claim by [plaintiff] based on the trial testimony, so much so, in fact, that the Court inferred that the amount claimed in the lien had been overstated such that recovery on the mechanic's [*sic*] lien claim was precluded, but Forsythe apparently seeks to recover all of the attorney's fees she's incurred in defending all the claims that were tried; the breach of contract claim, the mechanic's [*sic*] lien claim, and the quantum meruit claim.

The Court's conclusion that the amount stated in the mechanic's [*sic*] lien, $356,000 [*sic*], grossly exceeded the reasonable value of the uncompensated work performed and which the Court assessed at $217,000 does not change the fact that plaintiff *** prevailed on its quantum meruit claim and that claim was as far as the Court can tell based on the testimony it heard at trial, based on the very same underlying facts and fruits that [plaintiff] used to try to support its mechanic's [*sic*] lien claim.

In other words, the Court does not see how successfully defending the mechanic's [*sic*] lien claim resulted in any additional defense fees to Forsythe that she would not have also incurred in her unsuccessful defending of the equitable quantum meruit claim and the movant does not suggest otherwise or make any effort to segregate, isolate or identify only those fees that she claims relate to unique legal work performed in defense of the mechanic's [*sic*] lien."

¶ 26    Turning to the motion to reconsider, Judge Jasica concluded that defendant was attempting to raise the affirmative defense of unclean hands to defeat an equitable claim, but noted that "there's no unclean hands affirmative defense pled at any point." Judge Jasica stated that while the "constructive fraud was in the amount of the mechanic's [*sic*] lien claim," it was not "fraudulent or constructive fraud to have asserted an amount" under the Act. He added that "[i]t was simply the amount that led to the Court being unable to as an alternative [grant relief to foreclose the mechanics lien], assuming arguendo there was a contract."

¶ 27    On August 14, 2024, defendant filed a notice of appeal. On August 20, 2024, plaintiff filed a notice of cross-appeal.

¶ 28                                III. ANALYSIS

¶ 29    In her appeal, defendant challenges that portion of the trial court's ruling granting plaintiff relief under a theory of *quantum meruit* and its denial of her posttrial request for attorney fees. In its cross-appeal, plaintiff argues that the trial court erred in denying its claim for foreclosure of the mechanics lien. Plaintiff also disputes the trial court's denial of certain expenses under its *quantum meruit* claim. We address these claims below, beginning with those of defendant.

¶ 30                          A. Defendant's Appeal

¶ 31                            1. *Quantum Meruit*

¶ 32    Defendant argues that plaintiff should be barred from recovering under a *quantum meruit* theory pursuant to the doctrine of "unclean hands" because the trial court determined that plaintiff engaged in constructive fraud. Alternatively, defendant asserts that the amount awarded as damages under the *quantum meruit* theory is not justified based on the evidence of record.

¶ 33                            a. Unclean Hands

¶ 34    Defendant initially contends that plaintiff should be barred from recovering under a *quantum meruit* theory pursuant to the doctrine of "unclean hands" because trial court determined that plaintiff engaged in constructive fraud.

¶ 35    "The doctrine of 'unclean hands' prohibits a party from taking advantage of its own wrong." *Jameson Real Estate, LLC v. Ahmed*, 2018 IL App (1st) 171534, ¶ 83. "It is an equitable doctrine that bars relief when the party seeking that relief is guilty of misconduct in connection with the subject matter of the litigation." *Jameson Real Estate, LLC*, 2018 IL App (1st) 171534, ¶ 83. The doctrine is based on the principle that litigants should not be permitted to enlist the aid of a court of equity to further their fraudulent or unlawful purposes or take advantage of their own wrongdoing. *Jackson v. Board of Election Commissioners of the City of Chicago*, 2012 IL 111928, ¶ 26. For the doctrine to apply, the party's misconduct must rise to the level of fraud or bad faith. *Beitner v. Marzahl*, 354 Ill. App. 3d 142, 150 (2004); *Wolfram Partnership, Ltd. v. LaSalle National Bank*, 328 Ill. App. 3d 207, 221-22 (2001). The court examines the intent of a party to determine whether it acted with "unclean hands." *Jameson Real Estate, LLC*, 2018 IL App (1st) 171534, ¶ 83. It is within the sound discretion of the trial court whether to apply the doctrine of "unclean hands," and its application is not favored. *Beitner*, 354 Ill. App. 3d at 150. An abuse of discretion occurs when the trial court's ruling is arbitrary, fanciful, or unreasonable, or if no reasonable person would agree with the position adopted by the trial court. *People v. Williams*, 2022 IL App (2d) 200455, ¶ 108.

¶ 36    We are mindful that the doctrine of "unclean hands" is an affirmative defense. *Jameson Real Estate, LLC*, 2018 IL App (1st) 171534, ¶ 85. The defendant bears the burden to prove and plead an affirmative defense. *Jameson Real Estate, LLC*, 2018 IL App (1st) 171534, ¶ 85. Generally, an affirmative defense must be set forth in the answer or reply to a complaint. *Jameson*

*Real Estate, LLC*, 2018 IL App (1st) 171534, ¶ 85. This requirement is to prevent a plaintiff from being taken by surprise. *Cordeck Sales, Inc. v. Construction Systems, Inc.*, 382 Ill. App. 3d 334, 376 (2008). Accordingly, if an affirmative defense is not raised in a timely fashion in the trial court, it is forfeited. *Jameson Real Estate, LLC*, 2018 IL App (1st) 171534, ¶ 85. Nevertheless, this forfeiture may be overlooked by the reviewing court in the interests of achieving a just result and maintaining a sound and uniform body of precedent. *Jameson Real Estate, LLC*, 2018 IL App (1st) 171534, ¶ 85.

¶ 37 In this case, defendant did not raise the affirmative defense of "unclean hands" in her answer to plaintiff's complaint or at trial. Further, while she raised the issue of "constructive fraud" in relation to the mechanics lien claim in a posttrial brief, she did not raise it with respect to the *quantum meruit* claim. In fact, defendant did not raise the issue of "unclean hands" with respect to the *quantum meruit* claim until her motion to reconsider. Under these circumstances, we conclude that the affirmative defense was forfeited by defendant's failure to timely raise it before the trial court. See *Jameson Real Estate, LLC*, 2018 IL App (1st) 171534, ¶ 86; *Enterprise Recovery Systems, Inc. v. Salmeron*, 401 Ill. App. 3d 65, 76 (2010).

¶ 38 Forfeiture notwithstanding, the "unclean hands" doctrine would still not bar plaintiff from recovering under its *quantum meruit* claim. In ruling on defendant's motion to reconsider, Judge Jasica explained that while the "constructive fraud was in the amount of the mechanic's [*sic*] lien claim," it was not "fraudulent or constructive fraud to have asserted an amount" under the Act. He added that "[i]t was simply the amount" that led him to deny relief on the claim to foreclose the mechanics lien. Indeed, Judge Jasica recognized that plaintiff performed a substantial amount of electrical contracting work at the Old McHenry Residence and that it would be "very unjust" to allow defendant to retain the benefit of that work without paying a reasonable value for the services

rendered. Judge Jasica then reviewed the final invoice plaintiff submitted to Forsythe and, after disallowing about $200,000 in charges, awarded a money judgment in favor of plaintiff and against defendant under the *quantum meruit* count in the amount of $217,468.88. Based on the record before us, we simply cannot say that Judge Jasica's finding of constructive fraud by plaintiff in relation to the amount of its mechanics lien claim precluded plaintiff from recovering damages under its *quantum meruit* claim. See *Weydert Homes, Inc. v. Kammes*, 395 Ill. App. 3d 512, 522-23 (2009) (holding that while the plaintiff's failure to furnish a sworn contractor's statement warranted dismissal of its claim to foreclose a mechanics lien, any bad faith on the plaintiff's part was not sufficiently egregious to deny the plaintiff's *quantum meruit* claim). The issue before us is not whether defendant's arguments might have justified application of unclean hands to bar any award to plaintiff. The question is whether we should reverse because the trial court did not. "The 'unclean hands' doctrine is not a judicial straight-jacket, is not favored by the courts, is not intended to prevent equity from doing complete justice, and its application is a matter for the sound discretion of the trial court." *Mascenic v. Anderson*, 53 Ill. App. 3d 971, 972 (1977). We therefore conclude that Judge Jasica's decision not to apply the "unclean hands" doctrine to bar plaintiff's *quantum meruit* claim did not constitute an abuse of discretion.

¶ 39 Defendant also faults the trial court for allegedly "fail[ing] to recognize its discretion to consider fully the issue" of unclean hands. See *Seymour v. Collins*, 2015 IL 118432, ¶ 50 (noting that when a court is required by law to exercise its discretion, the failure to do so may itself constitute an abuse of discretion). We disagree with the notion that Judge Jasica failed to exercise his discretion to consider fully the application of the affirmative defense of unclean hands to the *quantum meruit* claim. To the contrary, as set forth previously, Judge Jasica, in ruling on defendant's posttrial motion and petition, clearly explained why his finding of constructive fraud

with respect to the amount of the mechanics lien did not foreclose plaintiff from recovering under a theory of *quantum meruit*. Notably, while Judge Jasica found constructive fraud in the *amount* claimed for the mechanics lien, he did not find constructive fraud with respect to the actual *filing* of the mechanics lien claim or the *quantum meruit* claim. Moreover, he noted that that plaintiff did perform electrical work at the Old McHenry Residence and that it would be "very unjust" to allow defendant to keep the benefit of that work without paying a reasonable value for the services rendered. See *Barry Mogul & Associates, Inc. v. Terrestris Development Co.*, 267 Ill. App. 3d 742, 749-50 (1994) (noting that relief is available under a theory of *quantum meruit* when one party has benefitted from the services of another under circumstances which, according to the dictates of equity and good conscience, he or she should not, to retain such benefit). Thus, Judge Jasica did explicitly exercise his discretion to consider the application of the affirmative defense of unclean hands to the *quantum meruit* claim.

¶ 40                                                   b. Damages

¶ 41    Alternatively, defendant challenges the damages awarded by Judge Jasica for the *quantum meruit* claim. "*Quantum meruit*, which literally means 'as much as he deserves,' describes a cause of action seeking recovery for the reasonable value of services nongratuitously rendered, but where no contract exists to dictate payment." *Bernstein & Grazian, P.C. v. Grazian & Volpe, P.C.*, 402 Ill. App. 3d 961, 979 (2010). Under a *quantum meruit* theory, a plaintiff must prove that (1) it performed a service to the benefit of the defendant, (2) it did not perform the service gratuitously, (3) the defendant accepted this service, and (4) no contract existed to prescribe payment for this service. *Bernstein & Grazian, P.C.*, 402 Ill. App. 3d at 979. To recover, the service performed by the plaintiff must be "of some measurable benefit to the defendant." *Van C. Argiris & Co. v. FMC Corp.*, 144 Ill. App. 3d 750, 753 (1986). The measure of recovery is the reasonable value of work

and material provided. *Hayes Mechanical, Inc. v. First Industrial, L.P.*, 351 Ill. App. 3d 1, 9 (2004). While the party seeking to recover under a *quantum meruit* theory may not be required to provide a line-by-line detailing of all their efforts, the party must provide some evidence that is sufficiently specific to prove the reasonable value of the benefits received by the opposing party. *Andrew W. Levenfeld & Associates, Ltd. v. O'Brien*, 2024 IL 129599, ¶ 59. If the party fails to present such evidence, the award will be deemed to be against the manifest weight of the evidence. *Andrew W. Levenfeld & Associates, Ltd.*, 2024 IL 129599, ¶ 59. A finding is against the manifest weight of the evidence only if an opposite conclusion is clearly apparent or if the finding is unreasonable, arbitrary, or not based on the evidence presented. *Graham v. Van Rengen*, 2024 IL App (2d) 230611, ¶ 53. Such deference is based on the recognition that the trial court is in a superior position to determine and weigh the credibility of the witnesses, observe their demeanor, and resolve conflicts in the evidence and testimony. *In re Marriage of Romano*, 2012 IL App (2d) 091339, ¶ 95.

¶ 42    In support of its argument that the amount of damages for the *quantum meruit* claim is not justified, defendant first argues that the trial court's ruling is "fundamentally inconsistent." Defendant points to the trial court's statement that "the lien amount is overstated by over 60%." She then reasons that "by reverse subtraction, a maximum of 40-percent of the lien amount yields $146,232.38 [$365,580.95 x 40%]." Defendant continues that, even if one considers the amount of damages requested by plaintiff in its *quantum meruit* count, 40% of $415,440.46 is $166,176.18. Yet, she observes, the trial court awarded $217,468.88 as damages on plaintiff's *quantum meruit* claim. Defendant asserts that "the numbers do not match the court's findings."

¶ 43    Defendant misconstrues Judge Jasica's statement. Judge Jasica stated that, based on his findings with respect to the *quantum meruit* claim, "the lien amount is overstated by over 60%."

Judge Jasica does not indicate how he determined that "the lien amount is overstated by over 60%." We observe, however, that Judge Jasica awarded damages of $217,468.88 for the *quantum meruit* claim. Sixty percent of $217,468.88 is $130,481.33. The difference between the requested mechanics lien ($365,580.95) and the *quantum meruit* damages awarded ($217,468.88) is $148,112.07. The amount of $148,112.07 is 68.107% of the *quantum meruit* damages awarded ($148,112.07/$217,468.88). Thus, the requested lien amount *is* overstated by more than 60% of the amount of recovery Judge Jasica awarded under the *quantum meruit* claim. There is nothing "fundamentally inconsistent" in Judge Jasica's ruling with respect to this finding.

¶ 44 Defendant additionally insists that the trial court's "individual determinations are no less circumspect." According to defendant, plaintiff "too often failed to provide sufficiently specific evidence to prove the true reasonable value of the benefits [defendant] allegedly received." Defendant continues that, Judge Jasica "at times arbitrarily picked a number of hours for work performed, multiplied by a 'reasonable' hourly rate to fill in some of the blanks." However, defendant's claim is not developed into proper argument. Save for one citation to the record, defendant does not direct us to any examples of this alleged error. More significant, defendant did not present any expert or other evidence at trial to counter Barnes's testimony regarding the reasonableness of the hourly rate he charged or the number of reasonable hours to perform the work at issue. Further, she did not call the project managers or interior designers as witnesses, even though much of the electrical work was ordered through them. In short, defendant's bare, undeveloped contentions violate the rules of procedure and render this argument forfeited. *People v. One Black 2016 Jeep Wrangler Unlimited*, 2025 IL App (2d) 240314, ¶ 37; see also Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) (requiring the appellant's brief to include argument "which shall contain the contentions of the appellant therefor, with citation of the

authorities and the pages of the record relied on"); *Graham v. Lakeview Pantry*, 2019 IL App (1st) 182003, ¶ 26 (explaining that the appellate court "is not a repository for an appellant to foist the burden of argument and research" and that an appellant who fails to develop an argument or support it with appropriate authority thus forfeits review of that argument). In any event, we note that Judge Jasica heard the testimony of Barnes and Forsythe as to the disputed charges on the invoices. Judge Jasica weighed this testimony, examined the final invoice plaintiff submitted to Forsythe, reviewed and considered the work referenced on each of the individual invoices comprising the final invoice, and provided a detailed explanation regarding his determination of the allowed and disallowed charges. Considering this record, we cannot say that Judge Jasica's findings as to the damages under plaintiff's *quantum meruit* claim was against the manifest weight of the evidence.

¶ 45                                                2. Attorney Fees

¶ 46    Defendant also claims that the trial court abused its discretion in failing to award her reasonable attorney fees pursuant to section 17 of the Act (770 ILCS 60/17 (West 2024)).

¶ 47    Section 17(c) of the Act provides that if the court "specifically finds that a lien claimant has brought an action under this Act without just cause or right, the court may tax the claimant the reasonable attorney's fees of the owner who contracted to have the improvements made and defended the action, but not those of any other party." 770 ILCS 60/17(c) (West 2024). The term "without just cause or right" is defined as "a claim asserted by a lien claimant or a defense asserted by the owner who contracted to have the improvements made, which is not well grounded in fact and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." 770 ILCS 60/17(d) (West 2024). A trial court's decision whether to award attorney fees under section 17 of the Act is reviewed for an abuse of discretion. *Roy Zenere*

*Trucking & Excavating, Inc. v. Build Tech, Inc.*, 2016 IL App (3d) 140946, ¶ 53; *Father & Sons Home Improvement II, Inc. v. Stuart*, 2016 IL App (1st) 143666, ¶ 47; *Central Illinois Electrical Services, L.L.C. v. Slepian*, 358 Ill. App. 3d 545, 550 (2005). An abuse of discretion occurs only when the trial court's decision is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court. *In re Estate of McDonald*, 2024 IL App (2d) 230195, ¶ 45.

¶ 48    Defendant argues that an award of attorney fees in this case was appropriate. Defendant premises her argument on the trial court's findings that the amount of the mechanics lien claimed by plaintiff was overstated and that the magnitude of the overstatement compelled it to infer intent and constructive fraud. We find defendant's argument unconvincing.

¶ 49    Judge Jasica explained that the existence of a contract is a prerequisite for bringing a mechanics lien claim. See *Power Dry of Chicago, Inc. v. Bean*, 2022 IL App (2d) 210043, ¶ 44 ("The Mechanics Lien Act assumes a valid contract exists between the parties."); *Fandel v. Allen*, 398 Ill. App. 3d 177, 185 (2010) (noting that, in the absence of a valid contract, a mechanics lien is unenforceable); *Tefco Construction Co., Inc. v. Continental Community Bank & Trust Co.*, 357 Ill. App. 3d 714, 719 (2005) (setting forth four prerequisites for bringing a mechanics lien claim, including a valid contract). Although Judge Jasica determined that there was no valid contract in this case, he did not find that plaintiff filed its mechanics lien claim "without just cause or right" as required for an award of attorney fees under section 17 of the Act. After reviewing the record, we cannot say that plaintiff's claim that it had an oral contract with Forsythe was not "well grounded in fact and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." 770 ILCS 70/17(d) (West 2024).

¶ 50    At the hearing on plaintiff's complaint, Judge Jasica was presented with conflicting testimony regarding the existence of an oral contract. Barnes testified that, following discussions with Brechel and the principal from Marshall Construction, an oral agreement was reached whereby plaintiff would be paid directly by defendant at "a rate per hour and materials for anything that was outside" of the original bid with Marshall Construction. Forsythe denied that she had agreed to pay plaintiff on a "time and material basis unless there was an emergency or something had to be done quick." Judge Jasica found Forsythe's testimony more credible and concluded that plaintiff had not met its burden to demonstrate that it had an oral contract with Forsythe in which she accepted or agreed to be billed on a time and material basis. Thus, while Judge Jasica disagreed with plaintiff regarding the existence of a contract, he never concluded that plaintiff's argument that he had a valid oral contract with Forsythe was not made in good faith. To the contrary, Judge Jasica, in ruling on defendant's posttrial filings, stated that plaintiff "had a reasonable basis in fact and under the law *** to assert that it had a mechanic's [*sic*] lien claim against the property in the substantial amount based on the underlying alleged oral contract." Considering this record, we cannot say that plaintiff's claim that it had an oral contract with Forsythe was not "well grounded in fact and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." 770 ILCS 70/17(d) (West 2024). Hence, Judge Jasica's finding that defendant was not entitled to an award of attorney fees under section 17 of the Act (770 ILCS 60/17 (West 2024)) did not constitute an abuse of discretion.

¶ 51    We acknowledge that Judge Jasica *alternatively* found that even if there had been a valid contract between the parties, plaintiff would still not have had a valid mechanics lien claim because plaintiff had "grossly overstated" the amount of the mechanics lien. Judge Jasica explained that the magnitude, numerosity, and open acknowledgment by Barnes of the impropriety of many of

the items comprising the overstatement would compel him to infer intent and find constructive fraud so as to defeat the mechanics lien claim. As noted in the preceding paragraph, however, despite these findings, Judge Jasica, in ruling on defendant's posttrial motions, stated that plaintiff "had a reasonable basis in fact and under the law *** to assert that it had a mechanic's [*sic*] lien claim against the property in the substantial amount based on the underlying alleged oral contract." Thus, we reject this as a basis to reverse the trial court's denial of attorney fees.

¶ 52     In support of its attorney fee argument, defendant directs us to *Lohmann Golf Designs, Inc. v. Keisler*, 260 Ill. App. 3d 886 (1994), *appeal allowed and cause remanded*, 157 Ill. 2d 504 (1994), and *supplemented*, 260 Ill. App. 3d at 894 (1995). In *Lohmann Golf Designs, Inc.*, the trial court found that a contractor engaged in constructive fraud when it filed separate lien claims on three different properties seeking in each of the claims the aggregate value of all the properties combined, thereby effectively tripling the amount of its lien claim. *Lohmann Golf Designs, Inc.*, 260 Ill. App. 3d at 889. The trial court ordered the contractor to pay the opposing parties' attorney fees pursuant to Illinois Supreme Court Rule 137 (134 Ill. 2d R. 137). *Lohmann Golf Designs, Inc.*, 260 Ill. App. 3d at 889. The court reasoned that the contractor's excessive liens were constructively fraudulent and prejudiced the opposing parties by wrongfully encumbering their property and clouding their title. *Lohmann Golf Designs, Inc.*, 260 Ill. App. 3d at 893-94. On appeal, the reviewing court affirmed. *Lohmann Golf Designs, Inc.*, 260 Ill. App. 3d at 894. Regarding the attorney fees, the reviewing court concluded that the award of attorney fees did not constitute an abuse of discretion because it was premised on "an informed decision based on valid reasons." *Lohmann Golf Designs, Inc.*, 260 Ill. App. 3d at 894. *Lohmann Golf Designs, Inc.*, does not compel reversal here as, for the reasons set forth above, Judge Jasica's decision in this case constituted "an

informed decision based on valid reasons." Since a reasonable person could agree with an informed decision based on valid reasons, Judge Jasica's decision did not constitute an abuse of discretion.

¶ 53    Additionally, we observe that a party requesting attorney fees must generally tie the fees requested to a specific sanctionable claim or statement unless the sanctionable claim is "the cornerstone of an entire baseless lawsuit." *Patton v. Lee*, 406 Ill. App. 3d 195, 200-02 (2010) (addressing the imposition of sanctions, including attorney fees, under section 226 of the Illinois Domestic Violence Act of 1986 (750 ILCS 60/226 (West 2008)) and Illinois Supreme Court Rule 137 (155 Ill. 2d R. 137) for allegedly false statements made in a petition for an order of protection); see also *Dayan v. McDonald's, Inc.*, 126 Ill. App. 3d 11, 23-24 (1984). In this case, plaintiff prevailed on its *quantum meruit* claim. Thus, its lawsuit was not entirely baseless. Moreover, defendant's attorney, in response to an inquiry from Judge Jasica, expressly stated that he was unable to segregate the costs and fees associated with defending the mechanics lien count from the costs and fees related to the *quantum meruit* count. And Judge Jasica, in ruling on the fee petition, expressly noted that defendant not only failed to "segregate, isolate or identify only those fees that she claims relate to unique legal work performed in defense of the mechanic's [*sic*] lien," but that successfully defending the mechanics lien claim did not result in any additional defense fees to defendant that she would not have also incurred in her unsuccessful defense of the *quantum meruit* claim. Defendant's inability to demonstrate that she incurred any additional attorney fees in defending the mechanics lien claim or to segregate the mechanics lien fees constitute separate bases to conclude Judge Jasica did not abuse his discretion in rejecting defendant's petition for attorney fees. For these reasons, we affirm the denial of defendant's petition for attorney fees in this case.

¶ 54                                B. Plaintiff's Cross-Appeal

¶ 55 In its cross-appeal, plaintiff argues that the trial court erred in denying its claim for foreclosure of the mechanics lien. Plaintiff also argues that the trial court's denial of certain damages under its *quantum meruit* claim was against the manifest weight of the evidence.

¶ 56                                    1. Mechanics Lien

¶ 57                                    a. Constructive Fraud

¶ 58 Plaintiff contends that the trial court erred as a matter of law because it utilized an incorrect basis for determining that plaintiff had committed constructive fraud in relation to the mechanics lien claim.

¶ 59 We initially note that a reviewing court may affirm the trial court's order on any basis appearing in the record. *Bhutani v. Barrington Bank & Trust Co.*, 2024 IL App (2d) 230162, ¶ 30. Here, the primary reason Judge Jasica rejected plaintiff's mechanics lien claim was due to the absence of an express oral contract for time and materials. We affirm that finding elsewhere in this decision. As such, whether Judge Jasica used an incorrect basis for determining that plaintiff had committed constructive fraud is irrelevant. Nevertheless, as we discuss immediately below, plaintiff's challenge to Judge Jasica's constructive fraud finding is unpersuasive.

¶ 60 Section 7(a) of the Act (770 ILCS 60/7(a) (West 2024)) provides in relevant part that "[n]o such [mechanics] lien shall be defeated to the proper amount thereof because of an error or overcharging on the part of any person claiming a lien therefor under this Act, unless it shall be shown that such error or overcharge is made with intent to defraud." "Section 7 is intended to protect an honest claimant who makes a mistake rather than a dishonest claimant who knowingly makes a false statement." *Peter J. Hartmann Co. v. Capitol Bank & Trust Co.*, 353 Ill. App. 3d 700, 706 (2004). Thus, if a lien claimant knowingly files a lien containing a substantial overcharge, the claim should be invalidated on the basis of constructive fraud. *Peter J. Hartmann Co.*, 353 Ill.

App. 3d at 706. An intent to defraud may be inferred from "documents containing overstated lien amounts combined with additional evidence." *Cordeck Sales, Inc.*, 382 Ill. App. 3d at 378; see also *Fedco Electric Co., Inc. v. Stunkel*, 77 Ill. App. 3d 48, 50-51 (1979) (upholding finding of constructive fraud based on contractor's admission that he failed to properly credit the opposing party and for billing the opposing party for work performed on another project).

¶ 61 Whether intent to defraud exists is a factual inquiry. *Jurkovic v. Boulder Developers, Inc.*, 2021 IL App (1st) 200940-U, ¶ 41; *Roy Zenere Trucking & Excavating, Inc.*, 2016 IL App (3d) 140946, ¶ 46; *People v. Rolston*, 113 Ill. App. 3d 727, 731 (1983). As such, we defer to the trial court's factual findings unless they are against the manifest weight of the evidence. *Eychaner v. Gross*, 202 Ill. 2d 228, 251 (2002); see also *Roy Zenere Trucking & Excavating, Inc.*, 2016 IL App (3d) 140946, ¶ 46. Such deference is based on the recognition that the trial court is in a superior position to determine and weigh the credibility of witnesses, observe the demeanor of witnesses, and resolve conflicts in witness testimony. *People v. McDonough*, 239 Ill. 2d 260, 266 (2010). A factual determination will be found to be against the manifest weight of the evidence only when the opposite conclusion is clearly evident or the finding is arbitrary, unreasonable, or not based on the evidence. *In re Marriage of Romano*, 2012 IL App (2d) 091339, ¶ 86.

¶ 62 Here, plaintiff alleges that Judge Jasica's finding of constructive fraud was improper because, other than the overstatement of charges themselves, there was no evidence of intent to defraud. In support of this claim, plaintiff seizes on the following remark from Judge Jasica when he ruled on defendant's motion to reconsider:

"I think the Court's memorandum opinion explains why under these facts it believes that [plaintiff] was still entitled to recover under its equitable theory and that the constructive fraud was in the amount of the mechanic's [*sic*] lien claim. It was not fraudulent or

constructive to have asserted an amount, a claim under the *** Act. It was simply the amount that led to the Court being unable to [*sic*] as an alternative, assuming arguendo there was a contract awarding anything under the mechanic's [*sic*] lien claim."

According to plaintiff, the above-quoted language shows that Judge Jasica's finding of constructive fraud was premised simply on the overstatement of charges themselves as there was no evidence that Barnes knew that the mechanics lien contained any intentional overstatement at the time the lien was recorded. As such, plaintiff reasons, Judge Jasica's finding of constructive fraud violates section 7 of the Act (770 ILCS 60/7 (West 2024)). We disagree.

¶ 63    Plaintiff's focus on Judge Jasica's comments in ruling on the posttrial motion to reconsider ignores the findings in Judge Jasica's initial written opinion. Judge Jasica's finding of constructive fraud was premised not only on the overstatement of charges, but also other evidence of record from which intent to defraud could be inferred. In this case, the other evidence relied on by Judge Jasica was Barnes's testimony. Specifically, Judge Jasica noted that Barnes conceded at trial that there was "significant inexcusable double billing, billing for work not performed on the [Old McHenry Residence], and [for] work performed under different contracts" all claimed in the mechanics lien amount. Judge Jasica found that "errors this prevalent and pervasive cannot properly be characterized as simply honest mistakes, but smack of an attempt to improperly inflate the amount of the encumbrance." As such, Judge Jasica "infer[red] intent" and found constructive fraud. Our review of the record finds ample support for Judge Jasica's findings.

¶ 64    At trial, Barnes acknowledged that the mechanics lien alleged that defendant owed plaintiff $365,580.95 for construction work on the Old McHenry Residence. Barnes further acknowledged that he signed a verification, which was attached to the mechanics lien, stating that the statements contained therein were true to the best of his information and belief. However, Barnes later

admitted that the amount claimed in the lien included multiple instances of work done or material used at the Bridlewood Property and the detached garage (which was under a different contract). Barnes also admitted that there were instances of duplicate charges and that $78,000 of the lien amount is actually owed by Marshall Construction under plaintiff's subcontract with that firm. Moreover, he testified to instances where he billed for labor performed by the same employees, on the same dates, and for the same hours at both the Old McHenry Residence and Forsythe's sister's house. Judge Jasica determined that the "magnitude, numerosity, and open acknowledgment by Barnes of the impropriety of many of the items comprising the overstatement" compelled him "to infer intent and find constructive fraud" so as to defeat the mechanics lien claim. Based on this record, and considering the deference we owe the trial court as the finder of fact, we cannot say that an opposite conclusion is clearly apparent. Hence, we conclude that Judge Jasica's findings of intent to defraud and constructive fraud were not against the manifest weight of the evidence.

¶ 65                                    b. Existence of A Contract

¶ 66    Next, plaintiff argues that the trial court erred as a matter of law when it denied recovery under its claim for a mechanics lien on the basis that there was no valid oral contract. Plaintiff argues even in the absence of an express contract, the existence of an implied contract between a contractor and a property owner is sufficient to support a mechanics lien claim under the Act. See 770 ILCS 60/1(a) (West 2024) (providing in part that "[a]ny person who shall by any contract or contracts, *express or implied, or partly expressed or implied*, with the owner of a lot or tract of land, or with one whom the owner has authorized or knowingly permitted to contract, to improve the lot or tract of land or for the purpose of improving the tract of land, or to manage a structure under construction thereon, is known under this Act as a contractor and has a lien." (Emphasis added.)). Plaintiff notes that the trial court found that recovery under a theory of *quantum meruit*

was appropriate. Citing to *Barry Mogul & Associates, Inc.*, 267 Ill. App. 3d at 749-50, plaintiff then asserts that allowing for *quantum meruit* recovery requires a finding of an implied contract between the parties. Plaintiff therefore reasons that, even absent an express verbal contract, the trial court could have granted plaintiff's claim to foreclose the mechanics lien.

¶ 67     We reject this argument for several reasons. First, in the trial court, plaintiff based its mechanics lien claim on the premise that it had an express oral contract with defendant. Until this appeal, it never argued in the alternative that it had an implied contract. Thus, this argument is forfeited. See *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996) ("It is well settled that issues not raised in the trial court are deemed waived and may not be raised for the first time on appeal."); *Hytel Group, Inc. v. Butler*, 405 Ill. App. 3d 113, 127 (2010) ("A reviewing court will not consider arguments not presented to the trial court.").

¶ 68     Second, while the existence of an implied contract may support a mechanics lien claim (see 770 ILCS 60/1(a) (West 2024)), we disagree with plaintiff's position that because the trial court allowed recovery under a theory of *quantum meruit* recovery, it tacitly found an implied contract sufficient to support recovery under the Act. It is true that the Act authorizes a lien for work undertaken pursuant to any contract, express or implied. See 770 ILCS 60/1(a) (West 2024). But Illinois recognizes two types of "implied contracts," those implied in fact and those implied in law. *Trapani Construction Co., Inc. v. Elliot Group, Inc.*, 2016 IL App (1st) 143734, ¶ 41. A contract implied in fact "arise[s] from a promissory expression that may be inferred from the facts and circumstances that demonstrate the parties' intent to be bound." *Trapani Construction Co., Inc.*, 2016 IL App (1st) 143734, ¶ 41. A contract implied in fact is a true contract. *Trapani Construction Co., Inc.*, 2016 IL App (1st) 143734, ¶ 42. However, *quantum meruit* is a quasi-contractual legal theory based on a contract implied in law. *Council for Jewish Elderly v. Kurtz*, 2024 IL App (1st)

230102, ¶ 42; *Archon Construction Co. v. U.S. Shelter, L.L.C.*, 2017 IL App (1st) 153409, ¶ 30; see also *Century 21 Castles By King, Ltd. v. First National Bank of Western Springs*, 170 Ill. App. 3d 544, 548 (1988) (noting that a contract implied in law "arises from facts and circumstances independent of an agreement or consent of the parties"). A contract implied in law is " 'no contract at all,' but a 'rule of law that requires restitution to the plaintiff of something that came into the defendant's hands but in justice belongs to the plaintiff.' " *Village of Bloomingdale v. CDG Enterprises, Inc.*, 196 Ill. 2d 484, 500 (2001) (quoting D. Dobbs, Dobbs Law of Remedies § 4.2(3), at 580 (2d. ed. 1993); see also *Barry Mogul & Associates*, 267 Ill. App. 3d at 750; Williston on Contracts § 68:1 (4th ed. 2025) (noting that contracts implied in law "are fictions of the law, adopted to achieve justice where no true contract exists"). As such, *quantum meruit* is not a theory based upon a true contract and it does not establish the type of contractual relationship necessary to form the basis for supporting a claim under the Act. See, *e.g.*, *Waters Edge Builders, LLC v. Longa*, 715 S.E. 2d 193, 196 (N.C. Ct. App. 2011) (holding that *quantum meruit* does not establish the contractual relationship necessary to form the basis for filing a mechanics lien claim under North Carolina law); *Doug Hambel's Plumbing, Inc. v. Conway*, 831 So. 2d 704, 705 (Fla. Ct. App. 2002) (noting that because a contract implied in law is not a contract, a mechanics lien is not available under Florida law based on a contract implied in law); *Gebhart v. United States*, 174 N.E. 2d 615, 621-22 (Ohio 1961) (noting that the reference to an "implied contract" under Ohio's mechanics lien statute is limited to a contract implied in fact).

¶ 69    Indeed, save for an assertion in its brief that *Barry Mogul & Associates* explained that "allowing for *quantum meruit* recovery requires a finding of an implied contract between the parties," plaintiff cites nothing to support the position that, in awarding *quantum meruit*, Judge Jasica actually found an implied oral contract sufficient to sustain its mechanics lien claim. But

*Barry Mogul & Associates* actually states that the term *quantum meruit* "is an expression that describes the extent of liability on a contract *implied in law* (also called a "quasi-contract")." (Emphasis added.) *Barry Mogul & Associates*, 267 Ill. App. 3d at 749. No Illinois case supports plaintiff's argument. But, as noted above, we did find decisions from sister states that hold *contra*.

¶ 70   Third, assuming *arguendo*, that an implied contract sufficient to support a mechanics lien claim existed between the parties in this case, plaintiff's argument would still fail. As noted above, Judge Jasica provided an alternative basis for rejecting the mechanics lien claim. He determined that plaintiff's mechanics lien claim failed because plaintiff had "grossly overstated" the amount of the mechanics lien and therefore committed constructive fraud. See 770 ILCS 60/7(a) (West 2024) (providing in relevant part that "[n]o such lien shall be defeated to the proper amount thereof because of an error or overcharging on the part of any person claiming a lien therefor under this Act, unless it shall be shown that such error or overcharge is made with intent to defraud.") We previously upheld Judge Jasica's finding of constructive fraud. For the foregoing reasons, we reject plaintiff's argument that the trial court erred as a matter of law when it denied recovery under its claim for a mechanics lien on the basis that there was no valid oral contract.

¶ 71                                  2. *Quantum Meruit*

¶ 72   Plaintiff also argues that the trial court erred in disallowing recovery under its *quantum meruit* claim for certain charges. Specifically, plaintiff challenges the trial court's findings as to (1) the 2016 balance due of $78,758.82, (2) charges on invoice #1305, and (3) charges in plaintiff's exhibits 24 through 29. Rule 341(h)(7) requires the appellant's brief to include "[a]rgument, which shall contain the contentions of the appellant and the reasons therefor, *with citation of the authorities* and the pages of the record relied on." (Emphasis added.) Here, other than a case citation for the standard of review, plaintiff's brief is devoid of citation to any authority regarding

the law applicable to the measure of damages in a *quantum meruit* claim. We conclude that plaintiff's failure to support these contentions with any authority as required by supreme court rules results in their forfeiture on appeal. See *In re Marriage of Katsap*, 2022 IL App (2d) 210706, ¶ 130 (finding forfeiture pursuant to Rule 341(h)(7) where the appellant cited one case for the standard of review but no authority for her contentions); *Enbridge Pipeline (Illinois), L.L.C. v. Murfin*, 2020 IL App (5th) 160007, ¶ 72 (noting that a reviewing court is not a repository into which an appellant may foist the burden of argument and research).

¶ 73                                    IV. CONCLUSION

¶ 74    For the reasons set forth above, the judgment of the circuit court of Lake County is affirmed.

¶ 75    Affirmed.